# United States Court of Appeals for the Federal Circuit

### 2013-5104

### CREWZERS FIRE CREW TRANSPORT, INC.,

**Plaintiff-Appellant,**

**v.**

### UNITED STATES,

**Defendant-Appellee.**

Appeal from the United States Court of Federal Claims in No. 11-CV-0607, Judge Susan G. Braden.

## PRINCIPAL BRIEF OF PLAINTIFF-APPELLANT
## CREWZERS FIRE CREW TRANSPORT, INCORPORATED

**Cyrus E. Phillips IV**

ALBO & OBLON, L.L.P.
**Courthouse Plaza**
**2200 Clarendon Boulevard, Suite 1201**
**Arlington, Virginia 22201-3331**

**Attorney for Plaintiff-Appellant,**
**Crewzers Fire Crew Transport, Incorporated**

**July 12th, 2013**

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

CREWZERS FIRE CREW TRANSPORT v. US

NO. 2013-5104

### CERTIFICATE OF INTEREST

Counsel for the (~~petitioner~~) (appellant) (~~cross appellant~~) (~~respondent~~) (~~appellee~~) (~~amicus~~), (name of party) Crewzers Fire Crew Transport, Incorporated, certifies the following (use "None" if applicable; use extra sheets if necessary):

1.  The full name of every party or amicus represented by me is:

    Crewzers Fire Crew Transport, Incorporated, 10662 East University Drive

    Apache Junction, Arizona 85220-4271

2.  The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

    Crewzers Fire Crew Transport, Incorporated, 10662 East University Drive

    Apache Junction, Arizona 85220-4271

3.  All parent corporations and any publicly held companies that hold 10 percent or more of the stock of the party or amicus curiae represented by me are:

    None

4.  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

    Albo & Oblon, L.L.P.; Cyrus E. Phillips IV


July 12th, 2013                          /s/ Cyrus E. Phillips IV
    Date                                 Signature of counsel


                                          Cyrus E. Phillips IV
                                          Printed name of counsel

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-iii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv-ix

STATEMENT OF RELATED CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-3

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-9

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-12

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-27

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27-28

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28-48

    I.    STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28-30

    II.    *RIDGE RUNNER* IS NOT CONTROLLING
        PRECEDENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30-41

    III.    MUTUALITY OF OBLIGATION IS NOT NECESSARY;
        THE COURT BELOW IMPROPERLY DISTINGUISHES
        *ACE-FEDERAL REPORTERS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42-46

    IV.    NOTWITHSTANDING THE TERMS OF THE BLANKET PURCHASE AGREEMENT,
        THE CONTRACT DISPUTES PROVISIONS AFFORD JURISDICTION OVER
        PLAINTIFF-APPELLANT CREWZERS FIRE CREW'S CHALLENGE TO

THE USFS CONTRACTING OFFICER'S FEDERAL GOVERNMENT
CLAIM AGAINST CREWZERS FIRE CREW...........................................46-49

CONCLUSION AND STATEMENT OF RELIEF SOUGHT.............................49-50

ADDENDUM  —  THE JUDGMENT AND THE OPINION
            IN QUESTION ...................................................................A-N

PROOF OF SERVICE.......................................................................51

CERTIFICATE OF COMPLIANCE........................................................52

# TABLE OF AUTHORITIES

## *STATUTES*

28 U.S.C. § 1295(a)(3)...................................................................9

28 U.S.C. § 1491(a)(1)...........................................................7, 27, 37, 38

28 U.S.C. § 1491(a)(2)........................1, 6, 7, 8, 12, 25, 26, 27, 28, 29, 37, 38, 42, 48

28 U.S.C. § 1491(b)(1)...................................................................2

28 U.S.C. § 2107(b)....................................................................9

28 U.S.C. § 2522.......................................................................9

41 U.S.C. §§ 7101-7109................................................................16

41 U.S.C. § 7102(a)................................................................25, 26

41 U.S.C. § 7102(a)(1).............................................................25, 37

41 U.S.C. § 7102(a)(2).............................................................25, 37

41 U.S.C. § 7102(a)(3).............................................................25, 37

41 U.S.C. § 7103(a)(3)........................................1, 5, 6, 8, 25-26, 31, 50

41 U.S.C. § 7103(d)...........................................................5, 6, 8, 50

41 U.S.C. § 7104(b)(1)....................1, 5, 6, 8, 12, 25, 26, 27, 28, 29, 38, 47, 49-50

41 U.S.C. § 7104(b)(3)...........................................................1, 5-6

_**REGULATIONS AND RESTATEMENTS**_

Federal Acquisition Regulation 2.101,
  "_Contract_," 48 C.F.R., Ch. 1 (10-1-10 Edition)............................................27, 39, 40

Federal Acquisition Regulation Subpart 13.3,
  "Simplified Acquisition Methods," 48 C.F.R., Ch. 1 (10-1-10 Edition)........................40

Federal Acquisition Regulation 13.303,
  "Blanket Purchase Agreements," 48 C.F.R. § 13.303 (10-1-10 Edition).......................40

Federal Acquisition Regulation 13.303-3(a)(2),
  "_Extent of Obligation_," 48 C.F.R. § 13.303-3(a)(2) (10-1-10 Edition)...........................40

Federal Acquisition Regulation 16.703(a),
  "Description," 48 C.F.R., § 16.703 (10-1-10 Edition)..........................................39

Federal Acquisition Regulation 52.212-4,
  "CONTRACT TERMS AND CONDITIONS—COMMERCIAL ITEMS (JUN 2010),"
  48 C.F.R., Ch. 1 (10-1-10 Edition)................................................4, 16, 23, 24

Federal Acquisition Regulation 52.233-1,
  "Disputes (JUL 2002),"
  48 C.F.R., Ch. 1 (10-1-10 Edition)................................................4-5, 16-17

**National Interagency Dispatch Standard Operating Guide
for Contracted Resources**, A Guide for Dispatchers
  & Incident Support Personnel, March 2011....................................12, 17-21, 24

RESTATEMENT OF THE LAW, SECOND, CONTRACTS,
  § 1, "Contract Defined"..........................................................................33

RESTATEMENT OF THE LAW, SECOND, CONTRACTS,
  § 1, comment _c._ "_Set of Promises_"................................................................33, 37

RESTATEMENT OF THE LAW, SECOND, CONTRACTS,
§ 77, "Illusory and Alternative Promises"...........................................45

RESTATEMENT OF THE LAW, SECOND, CONTRACTS,
§ 77, comment *c.* "*Alternatives not dependent on
promisor's free choice*"............................................................ 45

RESTATEMENT OF THE LAW, SECOND, CONTRACTS,
§ 79, comment *f.* "*Mutuality*"................................................ 44-45

RESTATEMENT OF THE LAW, SECOND, CONTRACTS,
§ 344, "Purposes of Remedies"..................................................... 41

RESTATEMENT OF THE LAW, SECOND, CONTRACTS,
§ 345, "Judicial Remedies Available"............................................. 41

## *CASES CITED*

*Ace-Federal Reporters, Inc. v. Barram,*
226 F.3d 1329 (Fed. Cir. 2000)............................................ 9, 28, 42-43

*Ace-Federal Reporters, Inc. v. General Services Administration,*
GSBCA Nos. 13298, 13508, 13509, 13510, and 13511, October 30, 1998,
*1998 GSBCA LEXIS 408*...........................................................42-43

*Aerolineas Argentinas v. United States,*
77 F.3d 1564 (Fed. Cir. 1996)....................................................48

*Brush v. Office of Personnel Management,*
982 F.2d 1554 (Fed. Cir. 1992)...................................................47

*Burnside-Ott Aviation Training Center v. Dalton,*
107 F.3d 854 (Fed. Cir. 1997)..................................................47-48

*Cary v. United States,*
552 F.3d 1373 (Fed. Cir. 2009)...................................................30

*Cedars-Sinai Medical Center v. Watkins,*
 11 F.3d 1573 (Fed. Cir. 1993), *cert. denied sub. nom.*
 *Cedars-Sinai Medical Center v. O'Leary*, 512 U.S. 1235 (1994)...........................29

*Centex Corp. v. United States,*
 395 F.3d 1283 (Fed. Cir. 2005)........................................................46

*Cherokee Nation v. Leavitt,*
 543 U.S. 631 (2005)..................................................................33

*Coyle's Pest Control, Inc. v. Cuomo,*
 154 F.3d 1302 (Fed. Cir. 1998)......................................................41

*Crewzers Fire Crew Transport, Inc. v. United States,*
 Fed. Cir. No. 2013-5105, filed June 12th, 2013.......................................3

*Crewzers Fire Crew Transport, Inc. v. United States,*
 Fed. Cir. No. 2011-5069, January 25th, 2012, *2012 U.S. App. LEXIS 1520*...................2

*Crewzers Fire Crew Transport, Inc. v. United States,*
 Fed. Cl. No. 12-064C, May 31st, 2013, *2013 U.S. Claims LEXIS 588*.........................3

*Crewzers Fire Crew Transport, Inc. v. United States,*
 Fed. Cl. No. 11-607C, May 31st, 2013,
 *2013 U.S. Claims LEXIS 586*..........................................2, 6-8, 43-44, 46-47, 49

*Crewzers Fire Crew Transport, Inc. v. United States,*
 98 Fed. Cl. 71 (2011)................................................................15

*Engage Learning, Inc. v. Salazar,*
 660 F.3d 1346 (Fed. Cir. 2011).................................................32, 42, 49

*Halim v. United States,*
 106 Fed. Cl. 677 (2012)..............................................................26

*Holmes v. United States,*
  657 F.3d 1303 (Fed. Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Joyce Terry d/b/a Shirt Shack v. United States,*
  98 Fed. Cl. 736 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Lauture v. International Business Machines Corp.,*
  216 F.3d 258 (2nd Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Malone v. United States,*
  849 F.2d 1441 (Fed. Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Northrop Grumman Computing Systems, Inc. v. United States,*
  709 F.3d 1107 (Fed. Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28-29

*Precision Pine & Timber, Inc. v. United States,*
  596 F.3d 817 (Fed. Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .46

*Ridge Runner Forestry v. Veneman,*
  287 F.3d 1058 (Fed. Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 30-31, 32

*Ridge Runner Forestry,*
  AGBCA No. 2000-161-1, February 13th, 2001, *2001 AGBCA LEXIS 6*. . . . . . . . . . . . . . . .31, 32

*Rig Masters, Inc. v. United States,*
  42 Fed. Cl. 369 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .48

*Spriggs v. Diamond Auto Glass,*
  165 F.3d 1015 (4th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Stone Forest Industries, Inc. v. United States,*
  973 F.2d 1548 (Fed. Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Thompson v. Cherokee Nation,*
  334 F.3d 1075 (Fed. Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Todd Construction, L.P. v. United States,*
656 F.3d 1306 (Fed. Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Larionoff,*
431 U.S. 864 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Universal Shelters of America, Inc. v. United States,*
87 Fed. Cl. 127 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*VanDesande v. United States,*
673 F.3d 1342 (Fed. Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37-38

*Walker v. Abbot Laboratories,*
340 F.3d 471 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

## STATEMENT OF RELATED CASES

This Appeal is from a final Judgment entered by the United States Court of Federal Claims dismissing a Civil Action which was filed under that Court's 28 U.S.C. § 1491(a)(2) Contract Disputes jurisdiction by Plaintiff-Appellant Crewzers Fire Crew Transport, Incorporated, 10662 East University Drive, Apache Junction, Arizona 85220-4271 (Crewzers Fire Crew). Plaintiff-Appellant Crewzers Fire Crew, a closely-held Nevada Corporation, had timely come to the United States Court of Federal Claims, 41 U.S.C. § 7104(b)(3), seeking de novo review of a Decision by a Department of Agriculture, United States Forest Service (USFS), Contracting Officer, 41 U.S.C. § 7104(b)(1). The USFS Contracting Officer had decided that Crewzers Fire Crew breached its obligations under a bilateral written exchange of a set of conditional promises, a Blanket Purchase Agreement, between Crewzers Fire Crew and the USFS, and she then asserted a Federal Government Claim against Crewzers Fire Crew, 41 U.S.C. § 7103(a)(3).

The final Judgment of June 5th, 2013 dismisses Plaintiff-Appellant Crewzers Fire Crew's Contract Disputes Civil Action for want of subject-matter jurisdiction, this

upon the premise that there is no enforceable Contract between Crewzers Fire Crew and the USFS. The final Judgment is supported by a Memorandum Opinion and Final Order of the United States Court of Federal Claims (Judge Susan G. Braden) in *Crewzers Fire Crew Transport, Inc. v. United States*, Fed. Cl. No. 11-607C, May 31st, 2013, *2013 U.S. Claims LEXIS 586.*[*]

An earlier challenge by Plaintiff-Appellant Crewzers Fire Crew to the proposed terms of this Blanket Purchase Agreement was previously before this Court as *Crewzers Fire Crew Transport, Inc. v. United States*, Fed. Cir. No. 2011-5069, January 25th, 2012, *2012 U.S. App. LEXIS 1520*. That challenge had arisen as a Pre-Award Procurement Protest filed under the United States Court of Federal Claims' 28 U.S.C. § 1491-(b)(1) jurisdiction. Noting that this Pre-Award Procurement Protest had been mooted when "on September 13th, 2011, the Forest Service terminated Crewzers from the Forest Service's BPA [Blanket Purchase Agreement] because it [Crewzers] had allegedly failed to abide by the agreement terms," on January 25th, 2012 this Court issued its Decision granting the United States' Motion to Dismiss. *Crewzers Fire Crew, 2012 U.S. App. LEXIS 1520, *2-*3*; FED. CIR. R. 47.5(a).

---

[*] Copies of the Judgment, page A, and of the Opinion supporting the Judgment, pages B through N, are all attached as an Addendum. FED. CIR. R. 28(a)(12).

Another Case known to counsel to be pending in this Court that will directly affect, or be directly affected by, the Court's decision in this Appeal is *Crewzers Fire Crew Transport, Inc. v. United States*, Fed. Cir. No. 2013-5105, filed June 12th, 2013. FED. CIR. R. 47.5(b). This directly related Case concerns the Default Termination by another USFS Contracting Officer of a second Blanket Purchase Agreement with Crewzers Fire Crew, this one for the hire of two sizes of individual flame retardant vinyl Tents. This second Case is likewise from a final Judgment of June 5th, 2013 dismissing for want of subject-matter jurisdiction Plaintiff-Appellant Crewzers Fire Crew's Civil Action pending under the Contract Disputes provisions, this again upon the premise that there is no enforceable Contract between Crewzers Fire Crew and the USFS. This final Judgment is supported by a Memorandum Opinion and Final Order of the United States Court of Federal Claims (Judge Susan G. Braden) in *Crewzers Fire Crew Transport, Inc. v. United States*, Fed. Cl. No. 12-064C, May 31st, 2013, *2013 U.S. Claims LEXIS 588.*

## JURISDICTIONAL STATEMENT

This Blanket Purchase Agreement contains the CONTRACT TERMS AND CONDITIONS—COMMERCIAL ITEMS (JUN 2010), Federal Acquisition Regulation 52.212-4, 48 C.F.R. Ch. 1 (10-1-10 Edition), clause. Joint Appendix, at 0103. Subparagraph (d) *Disputes* of this CONTRACT TERMS AND CONDITIONS—COMMERCIAL ITEMS (JUN 2010) clause incorporates the DISPUTES (JUL 2002), Federal Acquisition Regulation 52.233-1, 48 C.F.R. Ch. 1 (10-1-10 Edition) clause. Joint Appendix, at 0042.

Subparagraph (m) *Termination for Cause* of the CONTRACT TERMS AND CONDITIONS—COMMERCIAL ITEMS (JUN 2010) clause provides, *inter alia*, that the "Government may terminate this contract, or any part hereof, for cause *in the event of any default by the Contractor*, or if the Contractor fails to comply with any contract terms and conditions . . . ." Joint Appendix, at 0044 (Emphasis added). Subparagraph (c) *Claim* of the DISPUTES (JUL 2002) clause defines a "Claim" as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract

terms, or other relief arising under or relating to this contract." Joint Appendix, at 0050.

Subparagraph (d)(1) of the DISPUTES (JUN 2002) clause provides that "[a] claim by the Government against the Contractor shall be subject to a written decision by the Contracting Officer." Subparagraph (f) of the DISPUTES (JUL 2002) clause provides that the "Contracting Officer's decision shall be final unless the Contractor appeals or files a suit as provided in the Act [the Contract Disputes provisions]." Joint Appendix, at 0050.

41 U.S.C. § 7103(a)(3) provides that "[e]ach claim by the Federal Government against a contractor relating to a contract shall be the subject of a written decision by the contracting officer." 41 U.S.C. § 7103(d) provides that "[t]he contracting officer shall issue a decision in writing and shall mail or otherwise furnish a copy of the decision to the contractor." 41 U.S.C. § 7104(b)(1) provides that "in lieu of appealing the decision of a contracting officer . . . to an agency board, *a contractor may bring an action on the claim in the United States Court of Federal Claims, notwithstanding any contract provision*, regulation, or rule of law *to the contrary*." (Emphasis added). 41

U.S.C. § 7104(b)(3) provides that "[a] Contractor shall file any action . . . within 12 months from the date of receipt of a contracting officer's decision . . . ."

28 U.S.C. § 1491(a)(2) provides "[t]he *Court of Federal Claims shall have jurisdiction* to render judgment *upon any claim by or against, or dispute with, a contractor* arising under 7104(b)(1) of title 14, including a dispute *concerning termination of a contract*, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes *on which a decision of the contracting officer has been issued . . . .*" (Emphasis added).

On September 13th, 2011 the USFS Contracting Officer wrote Crewzers Fire Crew she had "determined to terminate your agreement [the Blanket Purchase Agreement] for cause in accordance with Section C.2, FAR Clause 52.212-4." Joint Appendix, at 0202.

On September 21st, 2011 Crewzers Fire Crew timely brought a Civil Action, 41 U.S.C. § 7104(b)(3), in the United States Court of Federal Claims, 28 U.S.C. § 1491-(a)(2); 41 U.S.C. § 7104(b)(1), challenging the USFS Contracting Officer's written Decision asserting a Federal Government Claim against Crewzers Fire Crew, 41 U.S.C. § 7103(a)(3), (d). Joint Appendix, at 0015. This Civil Action is not, as the Court below

has supposed, a money Claim against the United States filed by Crewzers Fire Crew under the Tucker Act, 28 U.S.C. § 1491(a)(1). *Crewzers Fire Crew*, *2013 U.S. Claims LEXIS 586, *11-*15*. Crewzers Fire Crew seeks equitable relief under the Contract Disputes provisions, 28 U.S.C. § 1491(a)(2); 41 U.S.C. § 7104(b)(1), not a money Judgment. Joint Appendix, at 0241 through 0243.

When this Civil Action was before the United States Court of Federal Claims it proceeded on Defendant-Appellee United States' Motion to Dismiss for lack of subject matter jurisdiction, on a Response by Plaintiff-Appellant Crewzers Fire Crew, on a Reply by Defendant-Appellee United States, and on a Sur-Reply by Plaintiff-Appellant Crewzers Fire Crew. Briefing was complete on May 25th, 2012. Joint Appendix, at 0017.

On May 31st, 2013 the United States Court of Federal Claims issued its Memorandum Opinion and Final Order granting the Motion to Dismiss for lack of subject matter jurisdiction, and there holding that Plaintiff-Appellant Crewzers Fire Crew's Blanket Purchase Agreement did "not manifest the necessary mutuality of obligation required for an enforceable contract," *Crewzers Fire Crew*, *2013 U.S. Claims LEXIS 586, *31-*32;* that Plaintiff-Appellant Crewzers Fire Crew's Second Amended Com-

plaint "failed to allege the mutuality of obligations necessary to form a binding contract, because even if and to the extent that the Forest Service promised to follow the DPL [Dispatch Priority List] in the event of an order [Record citations omitted] Crewzers did not make a binding promise to the Forest Service," *Crewzers Fire Crew*, *2013 U.S. Claims LEXIS 586, *33.*

On June 5th, 2013, the United States Court of Federal Claims entered a final Judgment granting Defendant-Appellee United States' Motion to Dismiss for lack of subject matter jurisdiction. Joint Appendix, at 0001. The United States Court of Federal Claims dismissed Crewzers Fire Crew's Civil Action under for lack of subject matter jurisdiction, not, as it could have, on the Merits, or on a Motion for failure to state a Claim upon which relief could be granted, or upon Cross-Motions for Summary Judgment.

This final Judgment of June 5th, 2013 disposes of Plaintiff-Appellant Crewzers Fire Crew's Civil Action brought before the United States Court of Federal Claims under 28 U.S.C. § 1491(a)(2) and 41 U.S.C. § 7104(b)(1) challenging the USFS Contracting Officer's written Decision asserting a Federal Government Claim against Crewzers Fire Crew, 41 U.S.C. § 7103(a)(3), (d).

Under 28 U.S.C. § 1295(a)(3) this Court has exclusive jurisdiction of Appeals from final Decisions of the United States Court of Federal Claims. On June 11th, 2013 Plaintiff-Appellant Crewzers Fire Crew noticed its Appeal as of right from the final Judgment of June 5th, 2013. 28 U.S.C. § 2522; Joint Appendix, at 0017-0018. This Appeal was timely docketed here on June 12th, 2013, FED. R. APP. P. 25(a)(1), well within sixty calendar days after entry of the final Judgment by the Court below, 28 U.S.C. § 2107(b).

---

## STATEMENT OF THE ISSUES

---

- Did the United States Court of Federal Claims properly hold *Ridge Runner Forestry v. Veneman*, 287 F.3d 1058 (Fed. Cir. 2002) to be controlling precedent when *Ridge Runner* involved a money Claim by a Contractor earlier and also erroneously dismissed for lack of subject matter jurisdiction, yet this Civil Action is not premised on a money Claim by a Contractor and instead seeks review of a Federal Government Claim for breach of a Blanket Purchase Agreement only?

- Did the United States Court of Federal Claims improperly distinguish *Ace-Federal Reporters, Inc. v. Barram*, 226 F.3d 1329 (Fed. Cir. 2000)?

- How can the United States Court of Federal Claims leave un-reviewed a Federal Government Claim for supposed breaches of a Blanket Purchase Agreement when a Civil Action challenging that Federal Government Claim is properly before the United States Court of Federal Claims?

## STATEMENT OF THE CASE

Crew Carrier Buses are hired under this Blanket Purchase Agreement to pick up wildland fire crews at tribal agencies, mobilization centers, jetports, or Federal Agency facilities, and then transport them to a fire camp and there to and from a fire line. Journeys take from several hours to several days. Journeys to and from the drop points along a fire line are off-road. Wildland fire crews are frequently Native Americans. Wildland fire crews may be transported by Crew Carrier Buses on any combination of paved highways, narrow mountainous roads with gravel or earth surfaces, or off-road in mountainous, rangeland, or timbered wildland areas. Joint Appendix, at 0214 through 0215.

This Blanket Purchase Agreement requires that Crew Carrier Buses be retrofitted from a School-type bus and be provided with seating capacity for twenty-two

adults (School buses typically have seating capacity for forty-four children). Crew

Carrier Buses must have a secure internal storage area for wildland fire crews' per-

sonal gear. Secure internal storage areas are required in case the Crew Carrier Bus

upsets. Wildland fire crews' personal gear includes sharp-edged Pulaski fire tools,

grub hoes, and mattocks. Crew Carrier Buses must have an external compartment

for storage of chain saws, chain saw fuel, drip torches, and fuses. No flamm-

able/combustible liquids or materials may be transported inside a Crew Carrier

Bus. Joint Appendix, at 0216 through 0217, 0247 through 0270.

> This Blanket Purchase Agreement provides, among its other requirements:

> It is estimated that the anticipated use period for resources within the Na-
> tional Geographic area may fall between February and November of each
> year. Potential use outside this area or anticipated use period could occur at
> any time. Since the resource needs of the Government and availability of
> Contractor's resources during an emergency cannot be determined in ad-
> vance, it is mutually agreed that, upon request of the Government, the Con-
> tractor shall furnish the resources listed herein to the extent the Contractor
> is willing and able at the time of order.

Joint Appendix, at 0103.

> The United States Court of Federal Claims reads one phrase of this provision

("the Contractor shall furnish the resources listed herein to the extent the Contrac-

tor is willing and able at the time of order") in isolation, holding this Blanket Pur-

chase Agreement does not impose mutual obligations, that even if the conditional USFS promise is sufficient ("resource needs of the Government . . . during an emergency cannot be determined in advance"), the last phrase of this provision, "Crewzers will accept an order only if it wishes to" is a "classic illusory promise." *Crewzers Fire Crew*, 2013 U.S. Claims LEXIS 586, *34-*35.

The issues are: (1) whether the last phrase of this provision may be read in isolation from the remaining terms of the Blanket Purchase Agreement and the USFS Standard Operating Guide, and (2) whether the assertion by the USFS Contracting Officer of a Federal Government Claim against Crewzers Fire Crew came properly before the Court below notwithstanding the provisions of this Blanket Purchase Agreement, 41 U.S.C. § 7104(b)(1) (*a contractor may bring an action . . . notwithstanding any contract provision . . . to the contrary*), else was properly before the Court below under 28 U.S.C. § 1491(a)(2) (*Court of Federal Claims shall have jurisdiction . . . upon any claim by or against, or dispute with, a contractor . . . concerning termination of a contract . . . on which a decision of the contracting officer has been issued*) by reason of that act itself.

## STATEMENT OF THE FACTS

### The Blanket Purchase Agreement.

On March 28th, 2011 Crewzers Fire Crew received a Notice of Award of a pre-season Incident Blanket Purchase Agreement for the hire, if ordered, of thirty-seven specific Crew Carrier Buses, these the Crew Carrier Buses which had been assigned by Crewzers Fire Crew for use at ten different Host Dispatch Centers. The Notice of Award was signed only by the USFS Contracting Officer. Joint Appendix, at 0052-0053, 0054, 0056, 0061, 0062 and 0063.

Two days later, on March 30th, 2011, Crewzers received its Blanket Purchase Agreement, a writing earlier signed by Crewzers and then later signed by the USFS Contracting Officer. Joint Appendix, at 0064. This Blanket Purchase Agreement was effective for a three-year period from the Notice of Award, from March 28th, 2011 through March 28th, 2014. Joint Appendix, at 0103. This multiple-Award Blanket Purchase Agreement issued to Crewzers Fire Crew was one of forty-four Blanket Purchase Agreements which were awarded by the USFS Contracting Officer for the hire, if ordered, of specific Crew Carrier Buses. Joint Appendix, at 0053.

Crewzers Fire Crew's offered prices for the hire of the specific Crew Carrier Buses assigned by Crewzers Fire Crew to particular Host Dispatch Centers were ranked, lowest price first, on Dispatch Priority Lists (DPLs) established by the USFS Contracting Officer for each Host Dispatch Center.

The Blanket Purchase Agreement allowed Crewzers Fire Crew to make yearly adjustments in its offered prices for the hire of specific Crew Carrier Buses and, each year, to assign specific Crew Carrier Buses to different Host Dispatch Centers. Joint Appendix, at 0103. The Blanket Purchase Agreement awarded to Crewzers Fire Crew was itself a seventy-nine page document, Joint Appendix, at pages 0064 through 0142, which, among other things, incorporated numerous Contract Clauses by reference, Joint Appendix, at pages through 0100 through 0103; set out seventeen pages of detailed equipment and performance requirements, Joint Appendix, at 0105 through 0121; included a nationwide minimum wage schedule, Joint Appendix, at pages 0124 through 0133; included detailed guides for rating performance and for past performance ratings themselves, Joint Appendix, at 0116 through 000118; and, finally, included the standard format for crew carrier bus safety in-

spections to be conducted by USFS both before and after Resource Orders were issued through Host Dispatch Centers, Joint Appendix, at 0141.

These multiple-Award Blanket Purchase Agreements obligated USFS Dispatchers and other Federal and State Agency personnel at Host Dispatch Centers to use the price listings on these DPLs established by the USFS Contracting Officer in ranked order, lowest prices first, when placing Resource Orders for the hire of specific Crew Carrier Buses under the forty-four Blanket Purchase Agreements awarded by USFS to private-party operators of Crew Carrier Buses. Joint Appendix, at 0107 through 0108. Just as the United States Court of Federal Claims has previously noted, these multiple-Award Blanket Purchase Agreements obligated USFS to use the DPLs established by the USFS Contracting Officer if USFS or other Federal and State Agencies placed under these multiple-Award Blanket Purchase Agreements Resource Orders for the hire of specific private-party Crew Carrier Buses. *Crewzers Fire Crew Transport, Inc. v. United States*, 98 Fed. Cl. 71, 75 (2011) ("if it [the USFS] chooses to use resources under the BPA, it must do so in accordance with the DPL").

This Blanket Purchase Agreement set out provisions for any Termination prior to its expiration date, March 28th, 2014, in a clause incorporated by reference, the CONTRACT TERMS AND CONDITIONS—COMMERCIAL ITEMS (JUN 2010) clause. Joint Appendix, at 0103. Per the CONTRACT TERMS AND CONDITIONS—COMMERCIAL ITEMS (JUN 2010) clause incorporated by reference, prior to its expiration date, this Blanket Purchase Agreement might have been earlier terminated only under two circumstances: (1) for the Government's convenience under subparagraph (l), *Termination for the Government's convenience*, else (2) for cause under subparagraph (m), *Termination for cause*. Joint Appendix, at 0044.

Subparagraph (d), "Disputes," of the incorporated CONTRACT TERMS AND CONDITIONS—COMMERCIAL ITEMS (JUN 2010) clause subjects this Blanket Purchase Agreement to the Contract Disputes provisions, 41 U.S.C. §§ 7101-7109, and provides that absent agreement, controversies arising under this Blanket Purchase Agreement are to be resolved in accordance with the DISPUTES (JUL 2002) clause. Joint Appendix, at 0042. The DISPUTES (JUL 2002) clause defines just which controversies, Claims, are subject to the Contract Disputes provisions. Subparagraph (c), "Claim," of the DISPUTES (JUL 2002) clause, a clause incorporated by reference in

this Blanket Purchase Agreement, explains in a Definition that controversies subject to the Contract Disputes provisions encompass both monetary and nonmonetary controversies. A Claim subject to the Contract Disputes provisions is:

> a written demand or written assertion by one of the contracting parties *seeking, as a matter of right*, the payment of money in a sum certain, *the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract.*

Joint Appendix, at 0050 (Emphasis added); *Todd Construction, L.P. v. United States*, 656 F.3d 1306, 1310-1315 (Fed. Cir. 2011) (a "Claim" under the Contract Disputes provisions encompasses requests for declaratory relief).

### The Standard Operating Guide.

USFS procedures for use of DPLs for hire of the different physical resources listed on National, Regional, and Local multiple-Award Blanket Purchase Agreements are set out in the "**National Interagency Dispatch Standard Operating Guide For Contracted Resources**, A Guide for Dispatchers & Incident Support Personnel," March 2011 (Standard Operating Guide). Joint Appendix, at 0143 through 0156. The Standard Operating Guide includes private-party Crew Carrier Buses among the contracted resources to which it applies, Joint Appendix, at 0150; and the Standard Operating Guide explains that "Host Dispatch Centers will follow the est-

ablished DPL ranking order when ordering contracted resources . . . .," Joint Appendix, at 0149.

The Standard Operating Guide sets out just how the conditional promises of the United States ("resource needs of the Government . . . during an emergency cannot be determined in advance") and the conditional promises of the multiple-Award Contractors ("the Contractor shall furnish the resources listed herein to the extent the Contractor is willing and able at the time of order") are to be exchanged.

This Blanket Purchase Agreement obligated Crewzers Fire Crew to provide its availability status to each of the Host Dispatch Centers within ten days after the Award. Joint Appendix, at 0103 through 0104. These Blanket Purchase Agreements were authorized for use by the USFS, the National Park Service, the Bureau of Land Management, the Bureau of Indian Affairs, the United States Fish & Wildlife Service, the Federal Emergency Management Agency, and designated State Agencies. Joint Appendix, at 0099, 0116, 0118. Employees of these Federal and State Agencies, by their position alone, could place Resource Orders under these multiple-Award Blanket Purchase Agreements. Joint Appendix, at 0104, 0118. In its Blanket Purchase Agreement, Crewzers Fire Crew provided its daytime, evening, and mo-

bile telephone numbers, and also the telephone number of its facsimile machine. Joint Appendix, at 0142.

The Standard Operating Guide required Crewzers Fire Crew to provide its current status (available/unavailable) over the three-year term of this Blanket Purchase Agreement by so informing the Host Dispatch Centers when it received calls from the Host Dispatch Centers for the dispatch of specific Crew Carrier Buses. Joint Appendix, at 0151, 0154.

DPLs for specific Host Dispatch Centers are provided over the Internet to USFS Dispatchers and to employees of other Federal and State Agencies authorized to place Resource Orders under the multiple-Award Blanket Purchase Agreements, and there through a Web Page established and maintained by USFS. Joint Appendix, at 0157 through 158 (http://www.fs.fed.us/business/incident/dispatch.php, last visited June 25th, 2013). This Web Page includes a hyperlink to the Standard Operating Guide, and it explains for those who access that Web Page that the Standard Operating Guide is "referenced" "on how to use DPLs." Joint Appendix, at 0157.

The Standard Operating Guide imposes on USFS and other Federal and State Agencies using the Host Dispatch Centers a requirement besides the requirements

imposed by the multiple-Award Blanket Purchase Agreements, *viz., that only those private-party Crew Carrier Bus operators on the DPLs are to be contacted through the Host Dispatch Centers when USFS or another Federal or State Agency has elected to use private-party Crew Carrier Buses.* Even if a private-party has an available Crew Carrier Bus or Buses, he will not be called by the USFS Dispatchers or by any other Federal and State Agencies, and his Crew Carrier Buses will not be hired, unless he is already listed on one of the DPLs established by the USFS Contracting Officer.

This additional requirement is set out as follows:

**1. How to Use the DPL**

*When receiving a request for which contracted resources will be utilized, the dispatcher will use the DPL.* Available Contractors on the DPL must be contacted in the order of DPL ranking. If an incident orders a specific type of equipment with a special attribute, (e.g. dozer with winch) the dispatcher may contact the first available Contractor on the DPL with the specific attribute identified. **Only the attributes that are listed on the DPL may be utilized to deviate from the DPL ranking, and special attribute requests must be documented on the resource order form.**

When receiving a dispatch call, the Contractor shall confirm their availability and ability to meet the date and time needed as identified on the resource order, meeting contract specifications and applicable travel regulations. If the Contractor has an unavailable status, cannot be

reached, not able to meet the date and time needed, or provide the re-quested resource(s), the dispatcher may proceed with contacting the next available contractor on the DPL. *The dispatcher must exhaust the DPL prior to placing the request to another dispatch zone or to the GACC [Geographical Area Coordination Center], provided the request does not restrict the use of contractors.*

. . . . .

Joint Appendix, at 0150 (Emphasis added).

As explained in the Standard Operating Guide provision set out above, a pri-vate-party USFS Contractor with a specific Crew Carrier Bus listed as available in ROSS, the Web-based database, for a particular Host Dispatch Center may respond to a dispatch call by: (1) confirming availability and ability to meet the date and time needed, or (2) as not able to meet the date and time needed, or (3) as cannot provide the specific Crew Carrier Bus listed on the DPL established for that Host Dispatch Center.

### Crewzers Fire Crew's Pricing Advantage.

Based on the prices offered by Crewzers Fire Crew for the hire of specific Crew Carrier Buses, Crewzers held the most favorable Dispatch Priority Rankings on many of the DPLs established by the USFS Contracting Officer for the Host Dispat-ch Centers. As an example, at the Phoenix Interagency Dispatch Center (AZ-PHC),

Crewzers Fire Crew held the four most favorable Dispatch Priority Rankings, and would have been offered Resource Orders for each one of the four specific Crew Carrier Buses dedicated by Crewzers Fire Crew for use by AZ-PHC before USFS Dispatchers at AZ-PHC, or other Federal and State Agency personnel using AZ-PHC, could permissibly make more calls and issue Resource Orders for the hire of other private-party Crew Carrier Buses. Joint Appendix, at 0159.

During the period March 30th, 2011 through August 12th, 2011 Crewzers Fire Crew accepted and responded to ninety-one Resource Orders placed under the DPLs issued against this Blanket Purchase Agreement. Each Resource Order was for the hire of a single Crew Carrier Bus. While Crewzers Fire Crew has many more Crew Carrier Buses which it hires out to Federal and State Agencies, Crewzers Fire Crew had only thirty-seven specific Crew Carrier Buses listed for hire on this Blanket Purchase Agreement; each specific Crew Carrier Bus dedicated by Crewzers Fire Crew to a specific Host Dispatch Center was hired on multiple occasions. Joint Appendix, at 0220.

### <u>The Federal Government Claim Against Crewzers Fire Crew</u>.

On August 12th, 2011 the USFS Contracting Officer suspended Crewzers Fire Crew's performances under the Blanket Purchase Agreement, invited a response from Crewzers Fire Crew concerning three Resource Orders issued to Crewzers Fire Crew, and yet, even before she had considered Crewzers Fire Crew's reclama, refused to allow USFS Dispatchers and other Federal and State Agency personnel to place further Resource Orders under the DPLs she had earlier established. Apparently, regardless of any response from Crewzers Fire Crew, she had even then decided to terminate the Blanket Purchase Agreement. Joint Appendix, at 0160 through 0162. This suspension of Crewzers Fire Crew's continuing performances under the Blanket Purchase Agreement took place at the peak of the 2011 wildfire season. Joint Appendix, at 0162.

On September 13th, 2011 the USFS Contracting Officer terminated Crewzers Fire Crew's Blanket Purchase Agreement "for cause," and doing so, she expressly relied on the Contract Terms and Conditions—Commercial Items (JUN 2010) clause, a clause incorporated by reference in Crewzers Fire Crew's Blanket Purchase Agreement. Joint Appendix, at 0198 through 0202.

The Court below has held that a Termination "for cause" under subparagraph (m) of the Contract Terms and Conditions—Commercial Items (JUN 2010) clause is the same as the better-known Termination for Default and carries with it the same burdens of proof placed by extant Case law on Default Termination Claims asserted by Contracting Officers. *Universal Shelters of America, Inc. v. United States*, 87 Fed. Cl. 127, 143-45 (2009). Unilateral terminations of Contracts for cause may be based only on a material, non-trivial breach. *Stone Forest Industries, Inc. v. United States*, 973 F.2d 1548, 1550-51 (Fed. Cir. 1992).

By November 7th, 2011 Crewzers Fire Crew was no longer listed under the DPL established for AZ-PHC. Joint Appendix, at 0203. Because Crewzers Fire Crew was no longer listed on any DPL for the hire of private-party Crew Carrier Buses through any Host Dispatch Center, USFS Dispatchers and other Federal and State Agency personnel were then, and are now, unable under the procedures set out in the Standard Operating Guide to call Crewzers Fire Crew or to offer Crewzers Fire Crew any Resource Orders for the hire of private-party Crew Carrier Buses.

**Statutory and Regulatory Provisions.**

At 41 U.S.C. § 7102(a) the Contract Disputes provisions expressly limit the sorts of "Contracts" covered by these provisions to Contracts for the procurement of property other than real property in being, i.e., personal property, both tangible and intangible, 41 U.S.C. § 7102(a)(1); to Contracts for the procurement of services, 41 U.S.C. § 7102(a)(2); and to Contracts for the construction, alteration, repair or maintenance of real property, 41 U.S.C. § 7102(a)(3). Contracts not falling in these three categories are not covered by the Contract Disputes provisions. *Joyce Terry, d/b/a Shirt Shack v. United States*, 98 Fed. Cl. 736, 737 (2011).

There is no dispute here that Crewzers Fire Crew's Blanket Purchase Agreement, whether or not it was a Contract, sought the procurement of services covered by the Contract Disputes provisions, 41 U.S.C. § 7102(a)(2), and that Crewzers Fire Crew's Blanket Purchase Agreement was set out in a writing, i.e., was an express, not an implied-in-fact, instrument. This Civil Action is a nonmonetary dispute of the sort over which the Court below has jurisdiction, 28 U.S.C. § 1491(a)(2), 41 U.S.C. § 7104(b)(1); the USFS Contracting Officer has here issued her Decision asserting a Federal Government Claim against Crewzers Fire Crew, this as is required by 41

U.S.C. § 7103(a)(3), and the only predicate necessary for subject matter jurisdiction in the Court below.

The Contract Disputes provisions do not explain just what a Contract is, even though they make it clear that unless an instrument is within the three types of Contracts set out in 41 U.S.C. § 7102(a), it is not subject to the United States Court of Federal Claim's Contract Disputes 28 U.S.C. § 1491(a)(2) jurisdiction, a limited jurisdiction to be sure, but one for which broad remedies are nonetheless available:

> *any claim by or against, or dispute with, a contractor* arising under section 7104(b)(1) of title 41, *including a dispute concerning termination of a contract*, rights in tangible or intangible property compliance with cost accounting standards, *and other nonmonetary disputes on which a decision of the contracting officer has been issued* under section 5 of that Act [41 U.S.C. § 7103(a)].

28 U.S.C. § 1491(a)(2) (Emphasis added); *Halim v. United States*, 106 Fed. Cl. 677, 685 (2012) (the Court below has statutory authorization to award equitable relief under the Contract Disputes provisions).

But the Federal Acquisition Regulation itself provides just what a Contract is within the three enumerated types of Contracts themselves set out in the Contract Disputes provisions, and here is the Definition there set out:

*Contract* means a mutually binding legal relationship obligating the seller to furnish the supplies or services (including construction) and the buyer to pay for them. *It includes all types of commitments that obligate the Government to an expenditure of appropriated funds and that, except as otherwise authorized, are in writing. In additional to bilateral instruments, contracts include (but are not limited to) awards and notices of awards*; job orders or task letters issued under basic ordering agreements; letter contracts; orders, such as purchase orders, under which the contract becomes effective by written acceptance or performance . . . ."

Federal Acquisition Regulation § 2.101, *Contract*, 48 C.F.R. § 2.101 (10-1-10 Edition); Joint Appendix, at 0024 through 0025 (Emphasis added).

---

### SUMMARY OF THE ARGUMENT

---

The Court below wrongly supposed that this is a Civil Action founded upon a money Claim filed by Crewzers Fire Crew under the Tucker Act, 28 U.S.C. § 1491-(a)(1). Instead, this is a challenge by Plaintiff-Appellant Crewzers Fire Crew under the Contract Disputes provisions, 28 U.S.C. § 1491(a)(2); 41 U.S.C. § 7104(b)(1), to the Federal Government Claim asserted by the USFS Contracting Officer. This Civil Action proceeded below on Defendant-Appellee United States' Motion to Dismiss for lack of subject matter jurisdiction; it should have proceeded on the

Merits, else on a Motion to Dismiss for failure to state a Claim upon which relief could be granted, or on Cross-Motions for Summary Judgment.

The United States Court of Federal Claims regarded *Ridge Runner* as dispositive. Instead the Court below should have looked to *Ace-Federal Reporters*. This Blanket Purchase Agreement reflects an exchange of a set of conditional promises, and these conditional promises are enforceable. Mutuality of obligation is not necessary because the alternative performances reserved to Crewzers Fire Crew were left to events beyond Crewzers Fire Crew's control. Crewzers Fire Crew, here challenging a USFS Contracting Officer's Decision asserting a Federal Government Claim against Crewzers Fire Crew, properly invoked the Contract Disputes jurisdiction of the Court below.

---

### ARGUMENT

---

## I.  Standard of Review.

This Court's review of final Decisions of the United States Court of Federal Claims on grant or denial of Motions to Dismiss under its Contract Disputes jurisdiction, 28 U.S.C. § 1491(a)(2); 41 U.S.C. § 7104(b)(1), is de novo, and without def-

erence. *Northrop Grumman Computing Systems, Inc. v. United States*, 709 F.3d 1107, 1111 (Fed. Cir. 2013). But in this Civil Action where the Record is so far limited to Plaintiff-Appellant Crewzers Fire Crew's Second Amended Complaint and the documents submitted in support of, and in response to, Defendant-Appellee United States' Motion to Dismiss for lack of subject matter jurisdiction, for purposes of the USFS Motion denying Crewzers Fire Crew's allegations of jurisdiction the Court below must have accepted as true only uncontroverted factual allegations. C*edars-Sinai Medical Center v. Watkins*, 11 F.3d 1573, 1583-1584 (Fed. Cir. 1993), *cert. denied sub. nom. Cedars-Sinai Medical Center v. O'Leary*, 512 U.S. 1235 (1994).

The question whether this challenge by Plaintiff-Appellant Crewzers Fire Crew to the Federal Government Claim asserted by the USFS Contracting Officer is sufficiently stated under the Contract Disputes provisions, 28 U.S.C. § 1491(a)(2); 41 U.S.C. § 7104(b)(1), is here to be decided both: (1) based on the uncontroverted factual allegations of jurisdiction in Plaintiff-Appellant Crewzers Fire Crew's Second Amended Complaint, and then: (2) on the facts set out in Plaintiff-Appellant Crewzers Fire Crew's Second Amended Complaint and the documents so far sub-

mitted. It is not required that Plaintiff-Appellant Crewzers Fire Crew now have set

out all of the facts upon which its challenge to this Federal Government Claim may

ultimately be based, but there must be enough here to prove Contract Disputes

jurisdiction on uncontroverted facts, and Plaintiff-Appellant Crewzers Fire Crew

must have stated in its Second Amended Complaint a Civil Action plausible on its

face. *Holmes v. United States*, 657 F.3d 1303, 1322 n.15 (Fed. Cir. 2011); *Cary v.

United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009).

## II. *Ridge Runner* is Not Controlling Precedent.

The Court below finds *Ridge Runner* to be controlling precedent, holding that this

Decision requires a mutuality of obligation which the Court below decides is not pre-

sent in this Blanket Purchase Agreement. *Ridge Runner* involved a USFS Pacific

Northwest Interagency Engine Tender Agreement, not a multiple-Award USFS

Blanket Purchase Agreement, but the Court below considers this only a different la-

bel, and not a distinction. *Crewzers Fire Crew, 2013 U.S. Claims LEXIS 586, *27-*29*.

*Ridge Runner* was a Civil Action premised on a Contractor Claim for $180,000 in

money damages, 41 U.S.C. § 7103(a)(1), (2); *Ridge Runner*, 287 F.3d, at 1060, yet this

matter is a Civil Action premised on a challenge to USFS's Claim against Crewzers

Fire Crew, 41 U.S.C. § 7103(a)(3), a Federal Government Claim so as to eliminate early during the three-year term of this Blanket Purchase Agreement USFS's obligation, and the obligation of other Federal and State Agencies, to use the DPLs established by the USFS Contracting Officer to place Resource Orders for the hire of the specific Crew Carrier Buses offered by Crewzers Fire Crew through the Host Dispatch Centers. *Malone v. United States*, 849 F.2d 1441, 1443 (Fed. Cir. 1988) ("a government decision to terminate a contract for default is a government claim").

In *Ridge Runner* there were no Resource Orders issued to that Contractor, and that Contractor's money Claim was instead that USFS had "wrongfully deprived" the Contractor of work, placing Resource Orders with others which should have been placed with that Contractor. *Ridge Runner Forestry*, AGBCA No. 2000-161-1, February 13th, 2001, *2001 AGBCA LEXIS 6, *7-*8*. In this Civil Action, USFS issued through the Host Dispatch Centers ninety-one Resource Orders to Crewzers Fire Crew, and here Crewzers Fire Crew seeks a nonmonetary remedy, seeks reinstatement to the DPLs during the two years remaining of the three-year term of the Blanket Purchase Agreement. Crewzers Fire Crew seeks equitable relief under the Contract Disputes

provisions, not a money Judgment under the Tucker Act or under the Contract Disputes provisions. Joint Appendix, at 0241 through 0243.

In *Ridge Runner* there was neither a Basic Ordering Agreement nor a Blanket Purchase Agreement. Instead there was a one-page Pacific Northwest Interagency Engine Tender Agreement for the hire, if ordered, of three fire engines to be used on wildfires in Oregon and Washington during calendar year 1999. *Ridge Runner Forestry*, AGBCA No. 2000-161-1, *2001 AGBCA LEXIS 6, at *1.* This was a conditional promise, and the money Claim before the Agriculture Board of Contract Appeals should have been considered on its Merits. Because non-performance of that conditional USFS promise was excused by its own terms (the three fire engines would be hired "if ordered"), that Civil Action should have been dismissed for failure to state a Claim upon which relief could by granted, not for lack of subject matter jurisdiction. *Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1355 (Fed. Cir. 2011) ("Mastering the distinction between a dismissal for lack of jurisdiction and a dismissal on the merits 'is not merely an intellectual exercise without practical utility.'").

A set of promises, whether or not simultaneous, which are related in subject matter and performance, constitute a Contract.

This is RESTATEMENT OF THE LAW, SECOND, CONTRACTS, § 1 "Contract Defined":

**A contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty.**

Comment *c. Set of promises* explains:

A contract may consist of a single promise by one person to another, or of mutual promises by two persons to one another; or there may be, indeed, any number of persons or any number of promises. One person may make several promises to one person or to several persons, or several persons may join in making promises to one or more persons. To constitute a "set," promises need not be made simultaneously; *it is enough that several promises are regarded by the parties as constituting a single contract, or are so related in subject matter and performance that they may be considered and enforced together by a court.*

(Emphasis added).

Affirming the judgment of this Court in *Thompson v. Cherokee Nation*, 334 F.3d 1075 (Fed. Cir. 2003), the Supreme Court of the United States of America has held, in *Cherokee Nation v. Leavitt*, 543 U.S. 631, 639 (2005), that Federal Contracts promising reimbursement of a Tribe's indirect costs of Contract support must have been read together with a Statute which provided an unrestricted lump-sum appropriation, this as a set of promises, just as is provided by RESTATEMENT OF THE LAW, SECOND, CONTRACTS, § 1.

When there are sets of promises which together may be considered and enforced, it does not matter that one, or both, promises is conditional. This is best seen in other Federal Decisions holding enforceable at-will employment Contracts. An at-will employer, who by definition does not offer a fixed duration of employment, can be held responsible to pay for work done prior to termination. *See, e.g., Walker v. Abbot Laboratories*, 340 F.3d 471, 476 (7th Cir. 2003); *Lauture v. International Business Machines Corp.*, 216 F.3d 258, 261 (2nd Cir. 2000) (promise to perform work as consideration for promise to pay was a Contract even though the work was of no certain duration); *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1019 (4th Cir. 1999) (while there can be no action for breach of a conditional promise, a set of promises is nonetheless an enforceable Contract if performance of the broken conditional promise was not excused).

The Blanket Purchase Agreement awarded to Crewzers Fire Crew does not lack the status of an enforceable Contract because the use by USFS and other Federal and State Agencies of the DPLs established by the USFS Contracting Officer for the hire of specific Crew Carrier Buses through the Host Dispatch Centers was only a conditional promise, i.e., under the Blanket Purchase Agreement USFS and the other Fed-

eral and State Agencies could have chosen to use their own Crew Carrier Buses, or Crew Carrier Buses offered for hire by local Government entities, instead of considering the DPLs established by the USFS Contracting Officer and then placing a Resource Order for the hire from private-party lessors of the specific Crew Carrier Buses listed on those DPLs.

Likewise it does not matter that Crewzers Fire Crew could decline to accept a Resource Order for a specific Crew Carrier Bus listed as available in ROSS, the Web-based database, at a particular Host Dispatch Center. The Blanket Purchase Agreement is not a Contract for generic Crew Carrier Buses to be made available through any Host Dispatch Center. A specific Crew Carrier Bus at a Host Dispatch Center could have already been dispatched to a fire line, else that specific Crew Carrier Bus may not have been available at the date and time needed, this for reasons beyond the control of Crewzers Fire Crew (location and lack of an available trained driver are examples). Joint Appendix, at 0223 through 0224.

Declining a Resource Order for a specific Crew Carrier Bus listed as available at a particular Host Dispatch Center is not akin to denying that this Blanket Purchase Agreement imposes no obligations whatsoever on Crewzers Fire Crew, a point im-

plied in the USFS Contracting Officer's assertion of a Federal Government Claim against Crewzers Fire Crew.

What matters is: (1) that USFS and other Federal and State Agencies must have used the DPLs established by the USFS Contracting Officer if USFS and other Federal and State Agencies hired Crew Carrier Buses from private-party lessors; (2) that ROSS, the Web-based database, listed specific Crew Carrier Buses as "available" at particular Host Dispatch Centers after making a Dispatch Call to Crewzers Fire Crew; and (3) that Crewzers Fire Crew, a private-party lessor of Crew Carrier Buses, must, for each Resource Order issued from a Host Dispatch Center which it accepted, have complied with the performance and other requirements of this Blanket Purchase Agreement.

Just this latter point (Crewzers Fire Crew's purported noncompliance with the performance and other requirements of the Blanket Purchase Agreement) is the premise of the USFS Contracting Officer's Decision asserting a Federal Government Claim against Crewzers Fire Crew, a Federal Government Claim so as to eliminate early during the three-year term of the Blanket Purchase Agreement USFS's obligation, and the obligation of other Federal and State Agencies, to use the DPLs estab-

lished by the USFS Contracting Officer to place Resource Orders for the hire of the specific Crew Carrier Buses offered by Crewzers Fire Crew through the Host Dispatch Centers.

These two sets of promises "are related in subject matter and performance," RESTATEMENT OF THE LAW, SECOND, CONTRACTS, § 1 at comment *c. Set of Promises*, and together they constitute a Contract for the breach of which the Contract Disputes provisions give a remedy.

An agreement between two parties, even one cobbled together from sets of conditional promises, if together the sets of promises provide a bargained-for exchange, is a Tucker Act Contract. *VanDesande v. United States*, 673 F.3d 1342, 1351 (Fed. Cir. 2012) (Stipulation Agreement and Equal Employment Opportunity Commission Final Order construed together). A 28 U.S.C. § 1491(a)(1) Tucker Act Contract based on conditional promises is likewise under the 28 U.S.C. § 1491(a)(2) Contract Disputes provision a Contract based on conditional promises, provided that the object of this latter set of conditional promises is among the three sorts of Contracts covered by 41 U.S.C. § 7102(a)(1), (a)(2), or (a)(3).

Parties do not have the power to alter this Contract jurisdiction, whether it arises from the money-mandating provisions of an express or implied-in-fact Contract under the Tucker Act, 28 U.S.C. § 1491(a)(1), or whether it arises from the Contract Disputes jurisdiction, 28 U.S.C. § 1491(a)(2); jurisdiction which here arises from the Contract Disputes provisions, 41 U.S.C. §§ 7102(a)(2), 7104(b)(1); jurisdiction which may not be disregarded, either by USFS or by Crewzers Fire Crew:

> Indeed, to hold otherwise is inconsistent with the well-established rule that neither a court nor the parties has the power to alter a federal court's statutory grant of subject matter jurisdiction.

*Id.,* 673 F.3d, at 1350.

In this Blanket Purchase Agreement USFS obligated itself, and other Federal and State Agencies, to use the DPLs established by the USFS Contracting Officer if USFS or these other Federal and State Agencies placed through a particular Host Dispatch Center Resource Orders for the hire of specific Crew Carrier Buses. Crewzers Fire Crew was obligated by this Blanket Purchase Agreement, if it received a Dispatch Call for a specific Crew Carrier Bus listed as "available" at a specific Host Dispatch Center, to accept a Resource Order if it could do so; and Crewzers Fire Crew obligated itself, if it could accept a Resource Order for a specific Crew Carrier Bus at a particular Host

Dispatch Center, to do so at a price, and on the terms, set out in the Blanket Purchase Agreement. Each of these promises was conditional, but together these two sets of conditional promises constituted a "Contract," just as that term is explained in Federal Acquisition Regulation § 2.101, "Contract," 48 C.F.R. § 2.101 (10-1-10 Edition). Joint Appendix, at 0024 through 0025.

The conditional promise made by the USFS for itself and the other Federal and designated States Agencies whose personnel could place Resource Orders through the Host Dispatch Centers did not become enforceable only upon Contractor acceptance of a proferred Resource Order—the obligations of this conditional promise commenced when the decision was first made to hire a private-party Crew Carrier Bus, not only after a Resource Order was placed.

Federal Acquisition Regulation § 16.703(a), "Description," 48 C.F.R. § 16.703 (10-1-10 Edition) provides that "[a] basic ordering agreement is not a contract." The instrument here in dispute is a USFS Blanket Purchase Agreement, not a Basic Ordering Agreement. A Blanket Purchase Agreement is not the same as a Basic Ordering Agreement, and the legal import of these instruments as it is set out in the Federal Acquisition Regulation is very different.

Federal Acquisition Regulation Subpart 13.3, "Simplified Acquisition Methods," 48 C.F.R., Ch. 1 (10-1-10 Edition) separately covers, at Federal Acquisition Regulation § 13.303, "Blanket purchase agreements (BPAs)," 48 C.F.R. § 13.303 (10-1-10 Edition). This separate coverage of Blanket Purchase Agreements is limited only to Blanket Purchase Agreements and does not include Basic Ordering Agreements. *The Federal Acquisition Regulation does not deny a Blanket Purchase Agreement is a Contract, as it expressly does for Basic Ordering Agreements*. Instead, the Federal Acquisition Regulation provides only the following mandatory term and condition for Blanket Purchase Agreements:

  (2) *Extent of obligation*. A statement that the Government is obligated only
  to the extent of authorized purchases actually made under the BPA.

Federal Acquisition Regulation § 13.303-3(a)(2), 48 C.F.R. § 13.303-3(a)(2) (10-1-10 Edition). This is a written commitment of appropriated funds as required by the Federal Acquisition Regulation, and thus a Blanket Purchase Agreement is a "Contract."

Denying an instrument is a Contract is one thing, but limiting the extent of the Obligation imposed by an instrument is another—read differently, the Federal Acquisition Regulation does not deny a Blanket Purchase Agreement is a Contract, and, instead, there is only a single limitation placed by the Federal Acquisition Regulation

on a Blanket Purchase Agreement, this that a Blanket Purchase Agreement is a conditional promise—upon a Government breach of a Blanket Purchase Agreement, the Contractor's money damages are limited to the "authorized purchases actually made," this the extent of the Agency's obligation upon the Contractor's performance in response to the conditional promise made in the Blanket Purchase Agreement. *Cf. Coyle's Pest Control, Inc. v. Cuomo*, 154 F.3d 1302, 1306 (Fed. Cir. 1998) (termite inspections to be ordered "if needed").

There is a difference between Contracts and Obligations. Just because an instrument (like USFS's Blanket Purchase Agreement) may not alone become the basis for a money Judgment does not mean it is not at the same time a Contract for purposes of the Contract Disputes provisions. When related sets of promises create enforceable obligations, RESTATEMENT OF THE LAW, SECOND, CONTRACTS, § 344 "Purposes of Remedies," a Court may protect these interests through Judgments awarding money damages, and/or enjoining non-performance of such an obligation, and/or declaring the rights of the parties, RESTATEMENT OF THE LAW, SECOND, CONTRACTS, § 345 "Judicial Remedies Available."

An express limitation on a legal remedy (money damages) is not also an express limitation on equitable remedies. And here these equitable remedies are made available by 28 U.S.C. § 1491(a)(2) both to Contractors and to the United States.

### III. Mutuality of Obligation is Not Necessary; The Court below Improperly Distinguishes *Ace-Federal Reporters*.

Before this Court in *Ace-Federal Reporters* were money Claims filed by several Contractors holding multiple-Award Government-wide Schedule Contracts for transcription and Court reporting services. There an Agency Board of Contract Appeals, looking to the terms of these multiple-Award Schedule Contracts, had denied these money Claims on their Merits, not on a Record limited only to uncontroverted facts. *Engage Learning*, 660 F.3d 1346, at 1355.

Particularly, that Agency Board of Contract Appeals had regarded terms of those multiple-Award Government-wide Schedule Contracts which said those instruments did not bind Agencies to purchase their requirements from any one Schedule Contractor and did not obligate Agencies to buy any minimum amount of services; each instrument admonished that "no guarantee is given that any quantities will be ordered." *Ace-Federal Reporters, Inc. v. General Services Administration*, GSBCA Nos. 13298, 13508, 13509, 13510, and 13511, October 30, 1998, *1998*

*GSBCA LEXIS 408, \*42-\*43.* Those Schedule Contractors could subcontract any services ordered to others not on those multiple-Award Government-wide Schedule Contracts. *Ace-Federal Reporters, 1998 GSBCA LEXIS 408, at \*46.*

The Agency Board denied those money Claims, which were premised on Orders placed other than under the multiple-Award Schedule Contracts, deciding those multiple-Award Schedule Contracts did not create enforceable obligations. *Ace-Federal Reporters, 1998 GSBCA LEXIS 408, at \*51.*

This Court reversed, deciding that even though the promises in those multiple-Award Government-wide Schedule Contracts were conditional, these promises were nonetheless enforceable obligations:

> In our case, as consideration for the contractors' promises regarding price, availability, delivery, and quantity, the government promised that it would purchase only from the contractors on the schedule, with few exceptions. The government's promise [citation omitted] has substantial business value because there were only between two and five authorized sources in each of the designated geographic regions. Rather than vying with 18,000 other transcription services for the government's business, the contractors had to compete with only one to four other contractors. . . .

*Ace-Federal Reporters*, 226 F.3d 1229, at 1332.

Apparently conceding the point that even a conditional promise can create enforceable obligations, the Court below distinguishes *Ace-Federal Reporters*, this be-

cause the Court below finds that the promises exchanged in this multiple-Award

Blanket Purchase Agreement are not sufficiently mutual:

> Here, the relationship between Crewzers and the Forest Service is different than that between the contractors and the Government in *Ace-Federal Reporters.* The contractors in *Ace-Federal Reporters* promised the Government price, availability, delivery, and quantity, akin to a requirements contract. [citation omitted]. In contrast, Crewzers only promised the Forest Service that crew transportation buses could be procured at a particular price, but made no promises as to their availability.

> The United States Court of Federal Claims also has determined that a BPA [Blanket Purchase Agreement] does not manifest the necessary mutuality of consideration requires for an enforceable contract, and instead is "merely a framework for future contracts [that] only creates a contractual obligation with regard to accepted orders." [Citations omitted].

> . . . .

> The Second Amended Complaint *failed to allege the mutuality of obligations necessary to form a binding contract*, because even if and to the extent that the Forest Service promised to follow the DPL in the event of an order [citation omitted], Crewzers did not make a binding promise to the Forest Service.

*Crewzers Fire Crew*, 2013 U.S. Claims LEXIS 586, *30-*33 (Emphasis added).

The Court below conflates mutuality of obligation with mutuality of consideration. The problem, however, is that the term "mutuality" is itself a meaningless term.

As explained in RESTATEMENT OF THE LAW, SECOND, CONTRACTS, § 79 "Adequacy of

Consideration; Mutuality of Obligation" at comment *f. Mutuality*—in the exchange of promises "voidable and unenforceable promises may be consideration," and even illusory or alternative promises may be consideration provided that the promisor reserves an alternative which is left to events beyond the promisor's control.

RESTATEMENT OF THE LAW, SECOND, CONTRACTS, § 77 "Illusory and Alternative Promises" explains at comment *c. Alternatives not dependent on promisor's free choice—*

> A promise may give the promise a right to choose one of several stated performances. *Or the selection among alternative performances may be left to events not within the control of either party.* In such cases, the promise, if bargained for, is consideration if any one of the alternatives would have been, unless the promisor knows that all such alternatives are subject to conditions which cannot exist or occur. . . .

(Emphasis added).

In this Blanket Purchase Agreement Crewzers Fire Crew could decline a Dispatch Call for a specific Crew Carrier Bus at a particular Host Dispatch Center only if that specific Crew Carrier Bus listed as "available" at the Host Dispatch Center had already been dispatched to a fire line, else that specific Crew Carrier Bus was not available at the date and time needed, this also for reasons beyond the control of Crewzers Fire Crew (location and lack of an available trained driver are examples).

Absent such circumstances Crewzers Fire Crew could not have declined a Resource Order for a specific Crew Carrier Bus at a particular Host Dispatch Center which was listed as "available" in the on-line ROSS Web-based database—this would have been a breach of the implied contractual duty of good faith and fair dealing. *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 827 (Fed. Cir. 2010); *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005) ("The covenant imposes obligations on both contracting parties that include the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract."). One of the contracting parties may not unilaterally deprive the other "of a substantial measure of the fruits of the contract [by] appropriating those fruits, *pro tanto*, to itself." *Id.*, 395 F.3d, at 1305.

**IV. Notwithstanding the Terms of the Blanket Purchase Agreement, The Contract Disputes Provisions Afford Jurisdiction Over Plaintiff-Appellant Crewzers Fire Crew's Challenge to the USFS Contracting Officer's Federal Government Claim Against Crewzers Fire Crew.**

The United States Court of Federal Claims has decided that the last phrase of a provision of this Blanket Purchase Agreement ("the Contractor shall furnish the resources listed herein to the extent the Contractor is willing and able at the time of order") bars that Court below from exercising Contract Disputes jurisdiction over

Plaintiff-Appellant Crewzers Fire Crew's challenge to the USFS Contracting Officer's Federal Government Claim which she had asserted against Crewzers Fire Crew under that same Blanket Purchase Agreement. *Crewzers Fire Crew*, *2013 U.S. Claims LEXIS 586, *15* ("The United States Court of Federal Claims has subject matter jurisdiction over Crewzers' claims, if Crewzers and the Government entered into a contract.").

The Contract Disputes provisions do not allow subject matter jurisdiction over Contracting Officer Decisions to be thwarted by Contract terms. 41 U.S.C. § 7104-(b)(1) provides that "in lieu of appealing the decision of a contracting officer . . . to an agency board, *a contractor may bring an action on the claim in the United States Court of Federal Claims, notwithstanding any contract provision*, regulation, or rule of law *to the contrary*." (Emphasis added).

To quote from one of this Court's prior Opinions:

> The language of this statute is as clear as a glass slipper, there is no shoehorn in the legislative history, and the Government, just as surely as Cinderella's step-mother, cannot make the fit. . . .

*Brush v. Office of Personnel Management*, 982 F.2d 1554, 1559 (Fed. Cir. 1992); *see also United States v. Larionoff*, 431 U.S. 864, 873 (1977) ("regulations, in order to be valid, must be consistent with the statute under which they are promulgated"); *Burn-*

*side-Ott Aviation Training Center v. Dalton*, 107 F.3d 854, 858-859 (Fed. Cir. 1997)

("In government contract disputes, unlike contract disputes between two private par-

ties, the initial determination in each dispute is made by one of the parties, *i.e.*, the

CO [Contracting Officer]. Congress commanded that the CO's decision on any mat-

ter cannot be denied Board [or United States Court of Federal Claims] review.");

*Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1575 (Fed. Cir. 1996) ("a regu-

lation can not override a clearly stated statutory enactment"); *Rig Masters, Inc. v.*

*United States*, 42 Fed. Cl. 369, 372-373 (1998) (a Contract provision which imple-

mented a Federal Acquisition Regulation requirement denying Disputes Clause re-

view for Claims arising under a Value Engineering Change Proposal was invalid be-

cause it was in direct conflict with the statutory Contract Disputes provisions).

A party claiming subject matter jurisdiction under the Contract Disputes provi-

sions and challenging a Contracting Officer's Decision, 28 U.S.C. § 1491(a)(2) (*Court*

*of Federal Claims shall have jurisdiction . . . upon any claim by or against, or dispute*

*with, a contractor . . . concerning termination of a contract . . . on which a decision of*

*the contracting officer has been issued*), need only make a non-frivolous assertion of a

Contract with the United States, and those are the circumstances here. *Engage Learning*, 660 F.3d 1346, at 1353.

---

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

---

The United States Court of Federal Claims wrongly decided Defendant-Appellee United States' challenge to its Contract Disputes jurisdiction on a Motion to Dismiss for lack of subject matter jurisdiction, rather than on its Merits, else as a Motion to Dismiss for lack of failure to state a Claim upon which relief might be granted, or on Cross-Motions for Summary Judgment. This Blanket Purchase Agreement is a proper written exchange of a set of conditional promises, not a Contract founded on a "classic illusory promise." *Crewzers Fire Crew*, *2013 U.S. Claims LEXIS 586, *34-*35.*

For all these reasons, Plaintiff-Appellant Crewzers Fire Crew requests this Court hold that the United States Court of Federal Claims has committed legal error, and this Court remand to the United States Court of Federal Claims, with a direction to conduct further proceedings consistent with this Court's Opinion, this challenge under the Contract Disputes provisions, 28 U.S.C. § 1491(a)(2); 41 U.S.C. § 7104(b)-

(1), to the USFS Contracting Officer's written Decision asserting a Federal Government Claim against Crewzers Fire Crew, 41 U.S.C. § 7103(a)(3), (d).

Respectfully submitted,

/s/ Cyrus E. Phillips IV

_____

Cyrus E. Phillips IV

Virginia State Bar Number 03135

ALBO & OBLON, L.L.P.

Courthouse Plaza
2200 Clarendon Boulevard, Suite 1201
Arlington, Virginia 22201-3331

Telephone:          (703) 562-3382
Facsimile:          (703) 312-0415
Mobile:             (703) 819-5944
Electronic Mail:    lawyer@procurement-lawyer.com

Attorney of record for Plaintiff-Appellant,
Crewzers Fire Crew Transport, Incorporated.

Addendum

# In the United States Court of Federal Claims

No. 11-607 C

**CREWZERS FIRE CREW
TRANSPORT, INC.**

                                                      **JUDGMENT**

    v.

**THE UNITED STATES**

       Pursuant to the court's Memorandum Opinion and Final Order, filed May 31, 2013, granting defendant's motion to dismiss,

       IT IS ORDERED AND ADJUDGED this date, pursuant to Rule 58, that plaintiff's second amended complaint is dismissed.

                                         Hazel C. Keahey
                                        Clerk of Court

**June 5, 2013**                By:     s/ Debra L. Samler

                                        Deputy Clerk

NOTE: As to appeal, 60 days from this date, see RCFC 58.1, re number of copies and listing of all plaintiffs.  Filing fee is $455.00.

A

# In the United States Court of Federal Claims

No. 11-607C
Filed: May 31, 2013
**TO BE PUBLISHED**

*****************************************

| | |
|---|---|
| CREWZERS FIRE CREW TRANSPORT, INC., | Blanket Purchase Agreements; Contract Disputes Act, 41 U.S.C. §§ 601-13 (2006), *as amended and codified at* 41 U.S.C. §§ 7101-7109; |
| Plaintiff, | Federal Acquisition Regulations, 48 C.F.R. § 2.101 (definition of contracts); |
| v. | 48 C.F.R. § 2.201 (contract clause); 48 C.F.R. § 13.004 (effect of quotations); |
| THE UNITED STATES, | 48 C.F.R. § 13.303 (blanket purchase agreements); |
| Defendant | 48 C.F.R. § 52.212-4(m) (termination for convenience); Motion to Dismiss, RCFC 12(b)(1), 12(b)(6); Tucker Act, 28 U.S.C. § 1491(a)(1). |

*****************************************

**Cyrus E. Phillips IV,** Albo & Oblon, L.L.P., Arlington, Virginia, Counsel for Plaintiff, Crewzers Fire Crew Transport, Inc.

**Shelley D. Weger,** Commercial Litigation Branch, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

### MEMORANDUM OPINION AND FINAL ORDER

**BRADEN,** *Judge.*

## I.    RELEVANT FACTUAL BACKGROUND.[1]

The United States Forest Service ("Forest Service") from time to time purchases crew carrier buses, pursuant to a Blanket Purchase Agreement ("BPA"). These heavy duty vehicles are used to respond to "'all-hazard incidents' (natural and man-made disasters)" and to suppress wildfires in regional and nationwide wilderness areas. Am. Compl. ¶¶ 4-6; Pl. Resp. App. at 000081.

---

[1] The relevant facts discussed herein were derived from the November 10, 2011 Second Amended Complaint ("Am. Compl.") and an Appendix to Plaintiff's April 20, 2012 Response to the Government's April 12, 2012 Motion To Dismiss ("Pl. Resp. App.").

The Forest Service does not guarantee that it will place orders under the BPA for these heavy duty vehicles, because of the sporadic nature of incidents. Pl. Resp. App. at 000081 (BPA § B) ("[T]he placement of orders IS NOT GUARANTEED."). In addition, a BPA is not a binding contract, because any vehicle ordered thereunder, may be provided only if a BPA designated contractor is willing and able to perform at the time of a request. Pl. Resp. App. at 000085 (BPA § C.3.1). All BPA contractors are ranked on dispatch priority lists ("DPL"). Pl. Resp. App. at 000090 (BPA § D.6.2). Plaintiff Crewzers Fire Crew Transportation, Inc. ("Crewzers") was a designated contractor under a BPA that covered six geographic zones, each with a separate DPL. Pl. Resp. App. at 000090 (BPA § D.6.2). Each DPL provides vehicle identification numbers ("VINs") and ranks vehicles based on their per mile price and minimum daily guarantee price, which the Forest Service considers when it places an order under a BPA. Am. Compl. ¶ 10; Pl. Resp. App. at 000089-90; *see also* Pl. Resp. App. at 000090 (BPA § D.6.5.1) ("If a Contractor cannot be reached or is not able to meet the time and date needed, the dispatcher may proceed with contacting the next resource on the dispatch priority list."); Pl. Resp. App. at 000047-51.

Other federal government organizations also can order vehicles under a BPA, in the event of a wildfire in wilderness areas and/or an all-hazard incident. Am. Compl. ¶ 6. Those federal organizations include: the Bureau of Land Management; the Bureau of Indian Affairs; the United States Fish and Wildlife Service; and the Federal Emergency Management Agency. Am. Compl. ¶ 6. Each organization has its own negotiated prices for heavy duty vehicles. Pl. Resp. App. at 000142.

On March 30, 2011, Crewzers was awarded a BPA. Pl. Resp. App. at 000035. Crewzers' BPA had a three-year term and any request made thereunder was limited to a maximum value of $150,000. Am. Compl. ¶ 6; Pl. Resp. App. at 000081, 000085 (BPA §§ B, C.3.1). On August 12, 2011, a Forest Service Contracting Officer ("CO") sent a letter to the President of Crewzers, to provide notice that the March 30, 2011 BPA was being suspended, because of three alleged breaches of the terms of the BPA. Pl. Resp. App. at 000142-43. The first alleged breach occurred on May 8, 2001. On that date, the Forest Service ordered Bus No. 80 (VIN BA185KHB21614), but Crewzers sent Bus No. 110 (VIN IHVBBNKNONH395891). Pl. Resp. App. at 000142. According to the August 12, 2011 letter, if Bus No. 80 was not available, Crewzers was required by the BPA to decline the order. Pl. Resp. App. at 000142. If an order was declined, however, the Forest Service was allowed to request the next vehicle on the DPL. Pl. Resp. App. at 000142, 000090 (BPA §§ D.6.2, D.6.5.1). In this case, the next vehicle on the list after Bus No. 80, was owned by Expeditors by Lindale, Inc. Pl. Resp. App. at 000142, 000090 (BPA § D.6.5.1) ("If the Contractor cannot be reached or is not able to meet the time and date needed, the dispatcher may proceed with contacting the next resource on the dispatch priority list."). In addition, the August 12, 2011 letter pointed out that Crewzers sent the Forest Service an invoice requesting payment for Bus No. 110 under the Bureau of Indian Affairs' pricing schedule, which authorized a higher price than the Forest Service's schedule. Pl. Resp. App. at 000142. Although this billing error was corrected, the Forest Service nevertheless considered Crewzers' failure to decline the May 8, 2011 order for Bus No. 80 to be a breach of the March 30, 2011 BPA. Pl. Resp. App. at 000142.

C

The second alleged breach occurred on May 24, 2011, when the Forest Service ordered a bus with VIN 1HVBBPPN2PH508215, but Crewzers delivered a bus with VIN 1HVBBPPN6PH531402, which was not an authorized vehicle. Pl. Resp. App. at 000142. The BPA states that vehicles cannot be substituted, once an order is placed. Pl. Resp. App. at 000142; Pl. Resp. App. at 000090 (BPA § D.6.5.1) ("When receiving a dispatch call, the Contractor shall confirm their availability and ability to meet specified time frames. If the Contractor cannot be reached or is not able to meet the time and date needed, the dispatcher may proceed with contacting the next resource on the dispatch priority list."). As with the earlier incident, Crewzers requested payment under the Bureau of Indian Affairs' pricing schedule, but this time did not correct the billing error. Pl. Resp. App. at 000142.

The third alleged breach occurred on June 7, 2011, when the Forest Service ordered a vehicle with a VIN ending in 95890, but Crewzers delivered Bus No. 115 (VIN 1HBBAAN2SH676290) instead of declining the order. Pl. Resp. App. at 000143. Crewzers, however, was required to decline the order, because Crewzers' vehicle with VIN number ending in 95890 was unavailable. Pl. Resp. App. at 000143. If Crewzers had declined the order, the dispatcher would have proceeded to order the next vehicle listed on the DPL. Pl. Resp. App. at 000143.

The CO's August 12, 2011 letter, in addition to describing the three aforementioned alleged breaches, referenced a June 28, 2011 e-mail correspondence requesting that Crewzers review sections D.19 Workmanship and D.19.1 Incident Behavior and warning that any future misconduct might result in suspension or cancellation of Crewzers' BPA. Pl. Resp. App. at 000144. Based on these incidents, the CO suspended Crewzers' BPA. Pl. Resp. App. at 000143-44.

On August 15, 2011, Crewzers responded. Pl. Resp. App. at 000145. As to the first alleged breach, where Bus No. 110 was delivered instead of the ordered Bus No. 80, Crewzers claimed this was the result of confusion between the Bureau of Indian Affairs and the Forest Service dispatch systems. Pl. Resp. App. at 000145. Crewzers argued that the BPA identified three exceptions where the "host dispatch center will [not] give dispatch priority to the resources offering the greatest advantage (*see* § D.6.2) before all other private resources not under Agreement"; however, Crewzers claims it had no way of knowing when one of the exceptions was being utilized, and delivered the bus ordered over the phone by the Bureau of Indian Affairs' Zuni Agency.[2] In sum, Crewzers contended that it received a phone order from the Zuni Agency, prior to receiving the Forest Service's order for Bus No. 80. Pl. Resp. App. at 000145; Pl. Resp. App. at 000089 (BPA § D.6.1).

As to the second alleged breach, Crewzers responded that a verbal order was made by the Bureau of Indian Affairs, so that any miscommunication was between the Bureau of Indian Affairs and the Forest Service. Consequently, Crewzers did not receive the Forest Service's request form, until after it had dispatched the bus. Pl. Resp. App. at 000147.

---

[2] This is the Fire Management Service for the Pueblo of Zuni.

D

As to the third alleged breach, page two of the request form listed Bus No. 115, *i.e.*, the vehicle that Crewzers dispatched, although a different VIN was listed on page one. Pl. Resp. App. at 000148. Therefore, Crewzers contends that it delivered the correct vehicle. Pl. Resp. App. at 000148.

On September 13, 2011, the CO terminated Crewzers' BPA "for cause in accordance with Section C.2, [Federal Acquisition Regulation ("FAR")] Clause 52.212-4." Pl. Resp. App. at 000180, 000184. Regarding the first incident, the CO explained that the Bureau of Indian Affairs requested a contract for Bus No. 110, because that was the vehicle that arrived at the site of the incident, not because it was the vehicle ordered. Pl. Resp. App. at 000180. As to Crewzers' argument that a request form was not received until after the vehicle was dispatched, § D.6.4.1 of the BPA provides that all relevant information will be provided to the contractor when an order is accepted. Pl. Resp. App. at 000180. Therefore, it was Crewzers' responsibility to confirm the order and deliver the correct vehicle. As such, Crewzers should not have confirmed its availability and ability to meet the order, before knowing which agency placed the order or even where the fire was located. Pl. Resp. App. at 000181.

Regarding the third incident, although page two of the request form lists Bus No. 115, that page of the request form is for additional information that a dispatcher can enter into the system for documentation. Pl. Resp. App. at 000182. The dispatcher only had access to the VINs, not equipment identification numbers, since the DPL only provides VINs. Pl. Resp. App. at 000182. Therefore, Crewzers failed to deliver the correct vehicle, even though page one of the request form listed the requested VIN. Pl. Resp. App. at 000182. As a result of all of these incidents, the CO concluded that Crewzers "repeatedly failed to honor the terms and conditions" of the March 30, 2011 BPA, and it should be terminated for cause. Pl. Resp. App. at 000184.

## II.    PROCEDURAL HISTORY.

On September 21, 2011, Crewzers filed a Complaint against the United States ("the Government"). On September 26, 2011, Crewzers filed an Amended and Restated Complaint. On November 10, 2011, Crewzers filed a Second Amended Complaint, alleging that: (1) the CO and other Forest Service personnel acted in bad faith in terminating Crewzers' BPA "for cause"; (2) the CO, other Forest Service personnel, and other federal agency personnel interfered with Crewzers' performance of the BPA with a specific intent to deprive Crewzers of its contractual rights; (3) the actions of the CO and other Forest Service personnel breached the covenant of good faith and fair dealing; (4) the CO's decision to terminate Crewzers' BPA "for cause" was not "honestly rendered" and therefore was arbitrary, capricious, or an abuse of discretion; and (5) Crewzers' deviations from the BPA's requirements, if any, were not material and did not give the Forest Service the right to discontinue Crewzers' performance under the BPA. Am. Compl. ¶ 2. The Amended Complaint also requested declaratory relief and a declaration that Crewzers was entitled to reinstatement of the BPA and to recover contract damages, including expectation damages, for the remainder of the three-year term of the BPA. Am. Compl. ¶ 3.

On April 12, 2012, the Government filed a Motion To Dismiss, pursuant to RCFC 12(b)(1) and 12(b)(6) ("Gov't Mot."). Gov't Mot. at 1. On April 20, 2012, Crewzers filed a Response ("Pl. Resp.").

E

On May 18, 2012, the Government filed a Reply ("Gov't Reply").  On May 18, 2012, Crewzers also filed a Motion For Leave To File A Sur-Reply.  On May 23, 2012, Crewzers' motion was granted and on May 25, 2012, Crewzers filed a Sur-Reply ("Pl. Sur-Reply").

On October 11, 2012, this case was transferred from the Honorable Lawrence M. Baskir to the undersigned judge.

## III.   THE PRIOR RELATED CASE IN THE UNITED STATES COURT OF FEDERAL CLAIMS.

In *Crewzers Fire Crew Transport, Inc. v. United States*, 98 Fed. Cl. 71, 76 (2011) ("*Crewzers I*"), the court considered a similar bid protest seeking:  (1) a declaration that the BPA was "illusory and unenforceable, lack[ed] a reasonable basis, [was] unreasonable or irrational, and thus [was] arbitrary and capricious"; (2) a permanent injunction ordering the Forest Service to use BPAs that create binding contracts; and (3) a declaration that Crewzers was entitled to equitable relief and money damages.  *Id*.  Therein, the court determined the BPA was not a contract, because it was "merely a framework for future contracts and only creates a contractual obligation with regard to accepted orders." *Id*. at 79 (citation omitted).  In addition, because the BPA failed to guarantee performance, the court held that the BPA "lacks the mutual intent to form a binding contract." *Id*. (internal quotation marks omitted).  As the court observed, "The plaintiff's entire protest is built on the faulty assumption that in order to withstand scrutiny under our standards of administrative review, the Forest Service's BPA must possess the qualities of a binding contract." *Id*. at 84.  In the present case, Crewzers argues that the BPA is enforceable as a binding contract, in effect seeking reconsideration of *Crewzers I*.

## IV.   DISCUSSION.

### A.   Jurisdiction.

The United States Court of Federal Claims has "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1) (2006).  The Tucker Act, however, is "'only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages.'" *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Testan*, 424 U.S. 392, 398 (1976)).  Therefore, to satisfy the jurisdictional requirements of the Tucker Act, a plaintiff must identify and plead a constitutional provision, federal statute, independent contractual relationship, and/or executive agency regulation that provides a substantive right to money damages.  *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act itself."); *see also Roth v. United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004) ("Because the Tucker Act itself does not provide a substantive cause of action . . . a plaintiff must find elsewhere a money-mandating source upon which to base a suit.").

F

If a plaintiff meets the jurisdictional requirements of the Tucker Act, the plaintiff also must demonstrate compliance with the mandatory requirements of the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 601-13 (2006).[3] In order to have jurisdiction under the CDA, a plaintiff must have submitted a written and certified claim to the contracting officer and obtained a final decision by the Contracting Officer on the claim. *See M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010) (holding that CDA jurisdiction "requires both a valid claim and a contracting officer's final decision on that claim"). Although the CDA does not define the term "claim," the United States Court of Appeals for the Federal Circuit has stated that a "claim" is a "written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain[.]" *England v. The Swanson Grp., Inc.*, 353 F.3d 1375, 1379 (Fed. Cir. 2004) (quoting FAR § 2.201).

For claims over $100,000, Congress also requires that "the contractor . . . certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, that the amount requested accurately reflects the contract adjustment for which the contractor believes the [G]overnment is liable, and that the certifier is duly authorized to certify the claim on behalf of the contractor." 41 U.S.C. § 605(c)(1) (2006). In addition, for claims over $100,000, a failure to "issue a decision" or "notify the contractor of the time within which a decision will be issued" within sixty days of receipt of the claim is "deemed to be a decision by the [contracting officer] denying the claim." 41 U.S.C. § 605(c)(2), (5) (2006).

The United States Court of Federal Claims has subject matter jurisdiction over Crewzers' claims, if Crewzers and the Government entered into a contract. This is the central issue of the Government's April 12, 2012 Motion To Dismiss and is addressed below.

**B.    Standard For Decision On Motion To Dismiss Pursuant To RCFC 12(b)(1) And RCFC 12(b)(6).**

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion." *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction[.]"). "[I]n deciding the Government's motion to dismiss plaintiff[']s complaint, the court [is] obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). Nonetheless, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the

---

[3] As of January 4, 2011, Congress amended certain provisions of the CDA, and recodified the Act, as amended, at 41 U.S.C. §§ 7101-7109. *See* Public Contracts Act of Jan. 4, 2011, Pub. L. No. 111-350, § 3, 124 Stat. 3677, 3816-26. Although the Public Contracts Act repealed 41 U.S.C. §§ 601-13, any "rights and duties that matured, penalties that were incurred, and proceedings that were begun before the date of enactment of [the 2011] Act" are still governed by these sections of the United States Code. Pub. L. No. 111-350, § 7(b), 124 Stat. at 3855.

G

evidence. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

A challenge to the United States Court of Federal Claims' "[ability] to exercise its general power with regard to the facts peculiar to the specific claim . . . is raised by a [Rule] 12(b)(6) motion[.]" *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(6) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: . . . (6) failure to state a claim upon which relief can be granted[.]"). When considering whether to dismiss an action for failure to state a claim, the court must assess whether the complaint states "allegations plausibly suggesting (not merely consistent with)" behavior by defendant that, if proven, would entitle the plaintiff to judicial relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). The factual allegations must be substantial enough "to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations omitted).

C. **Issue Raised By The Government's April 12, 2012 Motion To Dismiss.**

1. **Whether A Contract Was Formed.**

a. **The Government's Argument.**

The Government's principal argument is that the United States Court of Federal Claims does not have subject matter jurisdiction to adjudicate Crewzers' claims, because the BPA is not a contract. Gov't Mot. at 10, 12 (citing 28 U.S.C. § 1491(a)(2); 41 U.S.C. § 7104). The United States Court of Federal Claims previously has ruled that the BPA at issue in this case was not a contract, because it "lacks mutual intent to form a binding contract" and does not place any obligations upon Crewzers or the Forest Service. Gov't Mot. at 12-13 (citing *Crewzers I*, 98 Fed. Cl. at 79-80 (citation omitted)).

In this case, the Forest Service had no contractual obligation to Crewzers, because the BPA states, "the placement of orders IS NOT GUARANTEED." Gov't Mot. at 13; Pl. Resp. App. at 000081 (BPA § B) (emphasis in original). Similarly, Crewzers was "under no obligation to honor [or accept] an Order." Gov't Mot. at 13 (quoting Am. Compl. ¶ 11).

Even if the court accepts Crewzers' assertion that *Crewzers I* "recognized" that the Forest Service was "obligated" to follow the DPLs when placing orders, the BPA imposed no binding obligation on Crewzers, and therefore no contract was formed. Gov't Reply at 8-9. In addition, the FAR does not refer to BPAs as contracts; instead it uses the term "agreements," the same term it uses to refer to basic ordering agreements and other "non-binding, tentative agreement[s]." Gov't Reply at 11-12 (citing 48 C.F.R. pt. 16, 16.7). Moreover, the FAR "expressly limits the Government's obligation to purchases actually made pursuant to the BPA." Gov't Reply at 12 (citing 48 C.F.R. § 13.303-3(a)(2)). Likewise, the FAR provides that a "quotation" is "not an offer that can be accepted by the Government," and that a contract only arises when the Government places an order that is properly accepted by Crewzers. Gov't Reply at 12 (citing 48 C.F.R. § 13.004(a)).

H

The Government further argues that *Crewzers I* was consistent with other precedent that "BPA[]s [and blanket pricing agreements] are not contracts, and are not binding upon the parties entering into them." Gov't Mot. at 13-14 (citing *Modern Sys. Tech. Corp. v. United States*, 24 Cl. Ct. 360, 362-63 (1991), *aff'd and adopted*, 979 F.2d 200 (Fed. Cir. 1992) (holding that the blanket pricing agreements at issue "d[id] not create any enforceable obligations between either party," and therefore operated as a mere framework for future contracts); *ICP Northwest, LLC v. United States*, 98 Fed. Cl. 29, 38-29 (2011) (determining that the BPAs at issue were not binding contracts, because they "state[d] that placement of orders [was] not guaranteed and holders of the BPAs are required to accept orders only to the extent they are willing and able to do so[.]")). In each of these cases, regardless of the label attached to the agreement at issue, the court considered whether there was the requisite mutual intent to form a contract. Gov't Reply at 13-14 (citing *Zhengxing v. United States*, 71 Fed. Cl. 732, 738 (2006) (determining that the BPA at issue "lack[ed] the mutual intent required to form a binding contract," and therefore there was "no factual or legal predicate establishing jurisdiction under the CDA"), *aff'd*, 204 F. App'x 885 (Fed. Cir. 2006).

In addition, each of Crewzers' remaining claims is dependent on an underlying contractual relationship that does not exist. With respect to Crewzers' claim of bad faith and that the CO's termination of the BPA "for cause" was not "honestly rendered" (Am. Compl. ¶ 41 (Count I); Am. Compl. ¶ 47 (Count IV)), the Government acknowledges that the United States Court of Federal Claims would have jurisdiction to adjudicate these counts in the context of the termination of a contract, but states that the BPA does not establish a contract between Crewzers and the Forest Service sufficient to provide jurisdiction over this claim. Gov't Mot. at 17.

Likewise, Crewzers' claim that the CO interfered with performance of the BPA, by applying overly stringent inspection standards during the Forest Service's pre-use inspections (Am. Comp. ¶ 43 (Count II)) must be dismissed, as it is dependent on whether the BPA was a contract. Gov't Mot. at 18. On the other hand, to the extent that Crewzers' claim relates to an order placed and accepted, pursuant to the BPA, Crewzers' claim was never presented to a contracting officer for a final decision, a jurisdictional requirement for disputes involving contracts subject to the CDA, under 41 U.S.C. § 7104. Gov't Mot. at 18 (citing *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327-28 (Fed. Cir. 2010) (holding that jurisdiction "requires both a valid claim and a contracting officer's final decision on that claim")); *see also* 41 U.S.C. § 7104(b)(1) (describing a contractor's right to bring an action in the United States Court of Federal Claims in response to "the decision of a contracting officer"). The record establishes that Crewzers made no written demand on the CO, and its e-mail exchange does not meet this requirement. Gov't Mot. at 19-20.

Similarly, Crewzers' claim that the CO and other Forest Service personnel breached the covenant of good faith and fair dealing that existed under the BPA (Am. Compl. ¶ 45 (Count III)) must be dismissed for failure to state a claim. Gov't Mot. at 21. The "'implied obligation of good faith and fair dealing must attach to a specific substantive obligation, mutually assented to by the parties.'" Gov't Mot. at 21 (quoting *Praecomm, Inc. v. United States*, 78 Fed. Cl. 5, 13 (2007)). Since the BPA is not a binding contract, it cannot give rise to a breach of the implied covenant of good faith and fair dealing. Gov't Mot. at 21-22. Moreover, the Forest Service's

I

actions were not "specifically targeted" to "reappropriate any 'benefit' guaranteed by the contract[.]" Gov't Mot. at 22 (quoting *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 829 (Fed. Cir. 2010)). In other words, Crewzers had no expectation of doing business under the BPA with entities that were not in the first place "authorized to place [o]rders under the BPA," and in fact, the BPA expressly indicated that no orders were guaranteed. Gov't Mot. at 22 (quoting Am. Compl. at ¶ 45).

And, to the extent that Crewzers contends that any of its deviations from the BPA were not material, and that the Forest Service is therefore liable for breach of contract (Am. Comp. ¶ 49 (Count V)), this claim cannot withstand a motion to dismiss since no contract existed in the first instance. Gov't Mot. at 23.

Assuming, *arguendo*, that the court has jurisdiction, it still does not have authority to grant Crewzers' requested relief, *i.e.*, reinstatement of the BPA or the DPLs. Gov't Mot. at 23-24; Gov't Reply at 17. Except in limited circumstances falling within the court's bid protest jurisdiction, as provided for in 28 U.S.C. § 1491(b)(2), the court cannot grant equitable relief nor award specific performance. Gov't Mot. at 23-24. In addition, even if the court were to determine that the CO's termination for cause was improper, the prescribed remedy is not reinstatement, but conversion of the termination for cause into a termination for convenience. Gov't Reply at 18-19 (citing 48 C.F.R § 52.212-4(m)). The *de novo* standard of review does not empower the court to step into the contracting officer's shoes to reinstate the BPA, but only to review the contracting officer's findings of fact. Gov't Reply at 17-18.

### b.    The Plaintiff's Response.

Crewzers responds that a contract was formed in this case through a set of promises derived from the interaction between the BPA and DPLs. Pl. Resp. at 17. In this case, the March 28, 2011 Notice of Award,[4] in combination with other actions that followed, formed a contract. Pl. Resp. at 16-17. According to Crewzers, the sets of promises need not be simultaneous, nor does it matter if they are conditional, as evidenced by enforceable at-will employment contracts. Pl. Resp. at 18-19. In sum, in this case, a contract exists, because: (1) the Forest Service must use the DPLs to hire private-party crew carrier vehicles; and (2) Crewzers was required to comply with the performance and other requirements in the BPA for each order it accepted. Pl. Resp. at 20-21. These promises between the Forest Service and Crewzers, although they were conditional, provided the bargained-for exchange necessary to establish a contract under the Tucker Act. Pl. Resp. at 21-22.

The Government improperly cited cases involving basic ordering agreements or basic agreements, not BPAs. Pl. Resp. at 23. BPAs, unlike basic ordering agreements or basic agreements, are separately covered in FAR 13.303, not FAR subpart 16.7. Pl. Resp. at 23-24. For this reason, the FAR does not expressly state that a BPA is not a contract, as it does for basic ordering agreements; instead, FAR 13.303 limits damages only to authorized purchases. Pl. Resp. at 24-25 (citing FAR 13.303-3(a)(2)). Therefore, although this FAR section implies that the BPA, in contrast to the orders placed under it, cannot alone provide the basis for a money

---

[4] Pursuant to FAR 2.101, the definition of a contract includes "notices of awards."

J

judgment, this does not mean that the BPA cannot at the same time be a contract for the purpose of the CDA, nor does it limit the court's ability to provide equitable remedies in the event of a breach. Pl. Resp. at 26-27. This is consistent with the fact that other United States Court of Federal Claims precedent has held that instruments, including basic ordering agreements, are enforceable contracts based on sets of promises related in subject matter and performance. Pl. Resp. at 29-31 (citing *Western Pioneer, Inc. v. United States*, 8 Cl. Ct. 291, 297 (1985) (holding that a basic ordering agreement was performed under circumstances that imposed "sufficient contractual overtones to qualify as a 'contract[.]'")).

Finally, Crewzers argues that the court has jurisdiction to order the reinstatement of the DPLs and the BPA. Pl. Resp. at 34-39. In response to the Government's argument that Crewzers has not presented its claims to the contracting officer for a final decision, pursuant to 41 U.S.C. § 7103(a)(1), (b)(1), Crewzers counters that the Government's cited precedent cannot logically stand for the proposition that noncompliance with explicit CDA requirements means that "Contractors are defenseless and that they can assert nothing in response to a Government Claim absent first submitting even nonmonetary defenses as Claims to the same Contracting Officer who earlier asserted a Government Claim against that Contractor." Pl. Resp. at 34-36. The fact that this case is a *de novo* proceeding means that "when this [case] was filed, this [c]ourt succeeded to the authority which had been given to the [Forest Service] Contracting Officer [under the Disputes Clause of the contract.]" Pl. Resp. at 36-37.

### c.   The Court's Resolution.

It is a settled matter of law that to invoke jurisdiction under the Tucker Act or the CDA, a plaintiff must allege all the requisite elements of a contract with the United States. *See Harbert/Lummus Agrifuels Projects v. United States*, 142 F.3d 1429, 1434 (Fed. Cir. 1998). The requisite elements include "a mutual intent to contract including an offer, an acceptance, consideration, and facts sufficient to establish that the contract was entered into with an authorized agent of the United States who had 'actual authority to bind the United States.'" *Gonzalez-McCaulley Inv. Group, Inc. v. United States*, 93 Fed. Cl. 710, 714 (2010) (quoting *Lion Raisins, Inc. v. United States*, 54 Fed. Cl. 427, 431 (2002)).

The issue before the court is whether the March 30, 2011 BPA creates a contractual relationship between Crewzers and the Forest Service.

The United States Court of Appeals for the Federal Circuit's precedent supports a finding that a BPA is not an enforceable contract. *See Ridge Runner Forestry v. Veneman*, 287 F.3d 1058 (Fed. Cir. 2002); *see also Ace-Fed. Reporters, Inc. v. Barram*, 226 F.3d 1329 (Fed. Cir. 2000). In *Ridge Runner*, the plaintiff was a fire protection company that entered into a tender agreement with the Forest Service to provide equipment and trained staff. *See* 287 F.3d at 1060. The agreement stated, "Award of an Interagency Equipment Rental Agreement does not guarantee there will be a need for the equipment offered nor does it guarantee orders will be placed against the awarded agreements." *Id.* at 1060 (citation omitted). The agreement also stated, "Because the equipment needs of the government and availability of contractor's equipment during an emergency cannot be determined in advance, it is mutually agreed that, upon request of the government, the contractor shall furnish the equipment offered herein *to the*

K

*extent the contractor is willing and able at the time of the order.*" *Id.* (citation omitted). This agreement is nearly identical to the BPA in this case, which states that "the Contractor shall furnish the resources listed herein to the extent the Contractor is willing and able at the time of order." Pl. Resp. App. at 000085 (BPA § C.3.1).

Ridge Runner "presented a claim for $180,000 to a contracting officer alleging that the Forest[] Service violated an 'implied duty of good faith and fair dealing,' because Ridge Runner was 'systematically excluded for the past several years from providing services to the Government.'" *Id.* The Department of Agriculture Board of Contract Appeals granted the Government's motion to dismiss, because no contract was entered into and therefore the Board lacked jurisdiction. *Id.* at 1061. On appeal, the United States Court of Appeals for the Federal Circuit held that the agreement at issue created two illusory promises. *Id.* at 1062. First, "[t]he government had the option of obtaining services from Ridge Runner or any other source, regardless of whether that source had signed a tender agreement." *Id.* at 1061-62. Second, "[i]f the government came calling, Ridge Runner 'promised' to provide the requested equipment only if it was 'willing and able.'" *Id.* at 1062. The fact that *Ridge Runner* did not involve a formal BPA is irrelevant, since that decision rested on the lack of mutual consideration, not the legal import of the specific type of agreement. In sum, our appellate court has instructed that

> To be valid and enforceable, a contract must have both consideration to ensure mutuality of obligation . . . and sufficient definiteness so as to "provide a basis for determining the existence of a breach and for giving an appropriate remedy." *Ace–Federal Reporters, Inc. v. Barram*, 226 F.3d 1329, 1332 (Fed. Cir. 2000) (internal citations omitted). "To constitute consideration, a performance or a return promise must be bargained for." RESTATEMENT (SECOND) OF CONTRACTS § 71(1) (1979). And the "promise or apparent promise is not consideration if by its terms the promisor or purported promisor reserves a choice of alternative performances[.]" *Id.* § 77.

*Ridge Runner*, 287 F.3d at 1061.

In *Ace-Federal Reporters*, ten contractors were awarded agreements in response to a United States General Services Administration request for proposals. *See* 226 F.3d at 1330-31. The awardee-contractors agreed to supply comparable items with varying prices at the Government's request. *Id.* at 1330. The contractors received the advantage of only having to compete with one to four contractors who were also on the schedule. *Id.* at 1332. Six of the contractors filed a claim with a contracting officer alleging breach of their contracts, because of unauthorized off-schedule purchases. *Id.* at 1331. The contracting officer declined to take action, which resulted in an appeal to the General Services Administration (GSA) Board of Contract Appeals. *Id.* The Board determined a contract did not exist, because the contractors were not guaranteed any business. *Id.* Following this appeal, the United States Court of Appeals for the Federal Circuit held that a contract did exist. *Id.* The appellate court reasoned, "[A]s consideration for the contractors' promises regarding price, availability, delivery, and quantity, the government promised that it would purchase only from the contractors on the schedule, with few exceptions." *Id.* at 1332.

L

Here, the relationship between Crewzers and the Forest Service is different than that between the contractors and the Government in *Ace-Federal Reporters*. The contractors in *Ace-Federal Reporters* promised the Government price, availability, delivery, and quantity, akin to a requirements contract. *See* 226 F.3d at 1332. In contrast, Crewzers only promised the Forest Service that crew transportation buses could be procured at a particular price, but made no promises as to their availability.

The United States Court of Federal Claims also has determined that a BPA does not manifest the necessary mutuality of consideration required for an enforceable contract, and instead is "merely a framework for future contracts [that] only creates a contractual obligation with regard to accepted orders." *Crewzers I*, 98 Fed. Cl. at 79 (quoting *Zhengxing v. United States*, 204 F. App'x 885, 886-87 (Fed. Cir. 2006)). Put another way, "[f]uture terms are spelled out, but performance is not guaranteed." *Crewzers I*, 98 Fed. Cl. at 79. In addition, the FAR provides relevant guidance on the treatment of BPAs. FAR 13.303-3(a)(2) requires a statement that expressly limits the Government's obligation under a BPA "only to the extent of authorized purchases actually made under the BPA." 48 C.F.R. § 13.303-3(a)(2). FAR 13.303-3(a)(1) further requires a "statement that the supplier shall furnish supplies or services, described in general terms, *if and when requested* by the contracting officer . . . during a specified period and within a stipulated aggregate amount, *if any*." 48 C.F.R. § 13.303-3(a)(1) (emphasis added). In *Crewzers I*, the United States Court of Federal Claims determined that the FAR's provision of these mandatory terms and conditions "make[s] it abundantly clear that the BPA carries no guarantee of performance." *Crewzers I*, 98 Fed. Cl. at 79. In addition, FAR 13.004 states that "issuance by the Government of an order in response to a supplier's quotation does not establish a contract. The order is an offer by the Government to the supplier to buy certain supplies or services upon specified terms and conditions. A contract is established when the supplier accepts the offer." 48 C.F.R. § 13.004. In this case, the BPA contains Crewzers' quotation and the qualification that the Forest Service may place orders with Crewzers, upon need. While Crewzers is correct that the FAR does not explicitly deny that a BPA is a contract, the aforementioned FAR provisions read together support a finding that a contract is not formed between a contractor and the Government until two conditions are met: an order must be placed under the BPA; and the contractor must accept that order.

The Second Amended Complaint failed to allege the mutuality of obligations necessary to form a binding contract, because even if and to the extent that the Forest Service promised to follow the DPL in the event of an order (Pl. Resp. App. at 000081, 000090 (BPA §§ B, D.6.3.1)), Crewzers did not make a binding promise to the Forest Service. In addition, the BPA states that, "[f]ollowing Agreement award, each host dispatch center will have an established dispatch priority list showing the resources located within their Host Dispatch Zone. The Government intends to dispatch contractor resources based on this priority ranking for other than initial attack." Pl. Resp. App. at 000090 (BPA § D.6.3.1). In other words, in the event of an incident, the Forest Service intended to follow the DPL, if it decided to order private-party crew carrier buses. Pl. Resp. App. at 00090 (BPA § D.6.3.1). The BPA also states, however, that "due to the sporadic occurrence of Incident activity, the placement of any orders IS NOT GUARANTEED." Pl. Resp. App. at 000081 (BPA § B). While Crewzers argues that the conditional nature of this promise does not matter (Pl. Resp. at 20), the Forest Service's obligation to follow the DPLs

M

appears to come into play only when a contract is formed by the placement and acceptance of an individual order.

Regardless of whether this conditional promise is sufficient, as Crewzers insists, the court has determined that Crewzers made no binding promises to the Forest Service. The BPA states, "the Contractor shall furnish the resources listed herein *to the extent the Contractor is willing and able at the time of order*." Pl. Resp. App. at 000085 (BPA § C.3.1) (emphasis added). This language is identical to that in the *Ridge Runner* agreement. The BPA also states, "[i]f the Contractor cannot be reached or is not able to meet the time and date needed, the dispatcher may proceed with contacting the next resource on the dispatch priority list." Pl. Resp. App. at 000090 (BPA § D.6.5.1). This sentence again emphasizes Crewzers' flexibility under the BPA. In other words, the BPA effectively states that Crewzers will accept an order only if it wishes to – a classic illusory promise. *See Ridge Runner*, 287 F.3d at 271 ("[An illusory promise consists of] words in promissory form that promise nothing; they do not purport to put any limitation on the freedom of the alleged promisor, but leave his future action subject to his own future will, just as it would have been had he said no words at all" (quoting *Torncello v. United States*, 681 F.2d 756, 769 (Ct. Cl. 1982))). A promise that a contractor will perform, only when the contractor is "willing and able" to do so is "a route of complete escape [that] vitiates any other consideration furnished and is incompatible with the existence of a contract." *Torncello*, 681 F.2d at 769. Therefore, Crewzers' BPA did not itself establish a contract with the Forest Service.

## V.    CONCLUSION.

For these reasons, the Government's April 12, 2012 Motion To Dismiss is granted. *See* RCFC 12(b)(1). The Clerk is directed to dismiss the November 10, 2011 Second Amended Complaint.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**

N

## PROOF OF SERVICE

Pursuant to FED. R. APP. P. 25(d)(1)(B), the undersigned certifies, under the penalty of perjury, that on Friday, July 12th, 2013 he caused to be sent, by Overnight Delivery, expenses prepaid, two printed copies of the foregoing Principal Brief of Plaintiff-Appellant Crewzers Fire Crew Transport, Incorporated to counsel for Defendant-Appellee United States at the following address:

> Shelley D. Weger, Esq.
> Trial Attorney
> U.S. Department of Justice, Civil Division
> Commercial Litigation Branch
> 1100 L Street, N.W., Room 12070
> Washington, D.C. 20005

> /s/ Cyrus E. Phillips IV

> _____
> Cyrus E. Phillips IV

### CERTIFICATE OF COMPLIANCE

Pursuant to FED. R. APP. P. 32(a)(7), the undersigned certifies, under the penalty of perjury, that this Principal Brief is set in Adobe's Minion® Pro Opticals, a proportionally-spaced Garalde Old Style face; that this Principal Brief is set in face 14-point or larger; and that this Principal Brief contains no more than 14,000 words, *viz.* that exclusive of the Certificate of Interest, the Table of Contents, the Table of Authorities, the Statement of Related Cases, and the Addendum, FED. R. APP. P. 32(a)(7)(B)(iii) and FED. CIR. R. 32(b), it contains 9,664 words out of 963 lines and 62,710 characters. I make this representation based on the "Word Count" dialog box under the Review tab, and this in the Proofing group at the top of the workspace in Microsoft® Word 2010 (14.0.6131.5000 (32-bit)).

/s/ Cyrus E. Phillips IV

_____

Cyrus E. Phillips IV